[Cite as *Morrison v. Horseshoe Casino*, 2020-Ohio-4131.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| WILLIE MORRISON, ET AL., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 108644 |
| v. | : | |
| HORSESHOE CASINO, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 20, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-870814

*Appearances:*

Alan I. Goodman, *for appellants*.

Thomas A. Skidmore Co., L.P.A., and Thomas A. Skidmore, *for appellees* Atlantis Security Company, Stephanie Maye, William Tell, Ed Schulte, and Kenneth Allen.

Perez & Morris, L.L.C., Andrew D. Wachtman, and Juan Jose Perez, *for appellees* Rock Ohio Cleveland Caesars, L.L.C., The Horseshoe Casino, Joan Peloso, Steven Barnes, and Jason Arrington.

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Plaintiffs-appellants, Willie Morrison ("Morrison") and Artesia Morrison ("Artesia") (collectively "the appellants"), appeal from the decision of the Cuyahoga County Common Pleas Court granting summary judgment in favor of defendants-appellees, Rock Ohio Caesars, L.L.C. ("Rock Ohio"), et al., and Atlantis Security Company ("Atlantis Security"), et al. The appellants raise the following assignments of error for review:

> 1. The trial court erred in finding Atlantis Security and its employees did not violate Morrison's constitutional rights.
>
> 2. The trial court erred in finding Atlantis Security and its employees were immune from liability pursuant to R.C. 2744.03(A)(6).
>
> 3. The trial court erred in dismissing [Rock Ohio] and its employees from liability because the casino's liability arises from the acts of Atlantis Security.
>
> 4. There being a question of fact as to whether Morrison's civil rights were violated, the lower court erred in dismissing the appellants' common law claims on the basis of qualified immunity.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment because the appellants' claims against the appellees fail as a matter of law.

## I. Procedural and Factual History

{¶ 3} This case arises out of an incident that occurred at the Horseshoe Casino, now known as Jack Casino (the "casino"), a private facility in Cleveland, Ohio that is owned by defendant Rock Ohio. On the date and times relevant to this case, defendants-appellees, Steven Barnes ("Barnes"), Joan Peloso ("Peloso"), and

Jason Arrington ("Arrington"), were employed by Rock Ohio, and worked in the casino's security department.

{¶ 4} In 2012, the casino entered into a security agreement with Atlantis Security, "a contract security management service in Northeastern Ohio [that employs] primarily security officers and Cleveland police officers." On the date and times relevant to this case, defendants-appellees, Officers Stephanie Maye ("Officer Maye"), William Tell ("Officer Tell"), Kenneth Allen ("Officer Allen"), and Edward Schulte ("Officer Schulte") (together the "defendant officers"), were working secondary employment at the casino for Atlantis Security. The defendant officers are primarily employed by the city of Cleveland Police Department (the "CPD"). Upon receiving written permission from the chief of police and the director of public safety, the defendant officers are permitted to perform secondary employment in their police uniforms.

{¶ 5} On September 12, 2013, Morrison drove to the casino to meet a friend. Morrison arrived at the casino after midnight and parked his vehicle in the parking garage across the street from the casino. When Morrison exited his vehicle, he encountered an unidentified female. Video footage of the encounter was captured by the casino's surveillance cameras. The video footage reflects that Morrison briefly spoke to the female as he walked past her in the parking garage at approximately 1:04 a.m.

{¶ 6} After the conversation, the female walked to her vehicle and Morrison proceeded down the parking garage stairs to the street level. Thereafter, the female

reported that she had been approached by a man with a gun on the second level of the parking garage. An incident report generated by the CPD's record-management system reflects that the police were contacted at 1:12 a.m. (the "CPD Incident Report"). The CPD Incident Report states that the purported suspect was described as a black male, who was approximately six-feet tall with a slender build. He was wearing an orange striped polo shirt, jeans, and an orange hat. The CPD Incident Report further indicates that the female expressed that she did not want to make a police report. Shortly thereafter, casino security, including the defendant officers, received a radio transmission that a suspect with a gun had approached a young woman in the parking deck across the street from the casino. Multiple on-duty units of the CPD were dispatched to the scene.

{¶ 7} As Morrison was standing with his friend on the street outside the parking garage, he noticed security guards, casino personnel, and police officers running across the street towards the parking garage. Once the officers ran into the parking garage, Morrison and his friend crossed the street and entered the casino.

{¶ 8} Upon entering the casino, Morrison and his friend went to the third floor of the casino. At approximately 1:26 a.m., Morrison was approached by a male and a female police officer. The female officer was identified as defendant Officer Maye. The male officer was identified as an on-duty police officer for the CPD. According to Morrison, one of the police officers ordered him to put his hands behind his back. Once detained, Morrison was placed in handcuffs by a third, unidentified on-duty police officer, and he was patted down for weapons. CPD

Incident Report reflects that Morrison was in the "custody" of the on-duty police officers. No firearm was located on Morrison's person. Thereafter, Morrison was escorted out of the casino by approximately 14 uniformed officers and was placed in an on-duty police officer's patrol vehicle. Video footage of Morrison's detention inside the casino was captured by the casino's surveillance cameras.

{¶ 9} Morrison testified that the "officers who drove the squad car that detained [him]" informed him that he was under arrest. The officers then drove the patrol vehicle to the parking garage in an effort to locate the vehicle Morrison drove to the casino. The CPD Incident Report reflects that Morrison's vehicle was discovered on the second level of the garage. Morrison testified that the officer who drove the patrol car was the officer who initiated the search of his vehicle, although other officers subsequently participated in the search. Once the search of the vehicle was concluded, Morrison was informed that no weapon was found and that he was free to leave. Morrison was not charged with a criminal offense.

{¶ 10} In October 2016, Morrison and Artesia filed a complaint against the appellees, alleging causes of action for false arrest and detention, assault and battery, conversion, loss of consortium, violation of civil rights under 42 U.S.C. 1983, and violation of civil rights under 42 U.S.C. 1981.[1]

{¶ 11} Following extensive discovery, the appellees filed separate motions for summary judgment in November 2017. In a joint motion for summary

---

[1] In April 2017, the trial court dismissed the claim for the alleged violation of 42 U.S.C. 1981 as being time barred by the applicable statute of limitations period.

judgment, Atlantis Security and the defendant officers argued that the officers were entitled to summary judgment as a matter of law pursuant to the governmental immunity provision set forth under R.C. 2744.03(A)(6). The defendant officers maintained that, while engaged in secondary employment with Atlantis Security, they acted in good faith and within the scope of their official responsibilities as Cleveland police officers. Additionally, the defendant officers asserted that they are entitled to qualified immunity on the appellants' Section 1983 claim because their conduct "did not violate a clearly established federal right which a reasonable person would have known." In turn, Atlantis Security argued that it could not be held vicariously liable because "there are no acts of its agents or employees which give rise to any kind of liability."

{¶ 12} Relevant to this appeal, Atlantis Security and the defendant officers supported their motion for summary judgment with (1) a copy of the CPD Incident Report, (2) the affidavits of Officers Maye, Tell, and Allen, (3) an incident report generated by the casino, (4) the affidavit of Kevin Jaite, the senior vice-president of Atlantis Security, and (5) Morrison's deposition testimony.

{¶ 13} Defendants Rock Ohio, the Horseshoe Casino, Peloso, Barnes, and Arrington also filed a joint motion for summary judgment. Collectively, the casino defendants argued that they were entitled to judgment as a matter of law on each claim because the undisputed facts demonstrate that "no one employed by the casino, including the casino employee defendants," (1) "arrested or detained Mr. Morrison," (2) "touched, or threatened to touch, Mr. Morrison," or (3) "touched Mr.

Morrison's vehicle." Rather, "all of the evidence submitted indicates that the actions taken against [Morrison] were performed by Cleveland police officers, over which the casino and its employees have no control." In support of their motion for summary judgment the casino defendants attached (1) Morrison's deposition testimony, and (2) the affidavits of Joan Peloso, Justin Arrington, and Steven Barnes.

{¶ 14} Following an extended stay in the proceedings, the appellants filed a brief in opposition to summary judgment in April 2019. The appellants argued that there remained genuine issues of material fact regarding the application of immunity and the scope of the defendants' participation in Morrison's arrest and the search of his vehicle. In support of the motion, the appellants relied on (1) surveillance video footage from the casino, and (2) the deposition testimony of casino employees Peloso and Barnes, and Atlantis Security employees Officers Maye, Schulte, and Tell.

{¶ 15} In May 2019, the trial court granted summary judgment in favor of the appellees. Regarding the appellants' state law claims, the trial court stated, in relevant part:

> The Court finds that Officer Maye, Officer Tell, Officer Allen and Officer Schulte are statutorily immune from liability from Plaintiff's Claims for False Arrest and Detention; Assault and Battery, Conversion, and Loss of Consortium pursuant to Ohio Revised Code §2744. Furthermore, if there is: no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, [¶] 20. As such, the Court finds that Plaintiff's claims against Defendant Atlantis Security Company, Officer Maye, Officer Tell,

Officer Allen and Officer Schulte for False Arrest and Detention; Assault and Battery, Conversion, and Loss of Consortium are hereby dismissed.

{¶ 16} With respect to the appellants' federal claim, the court stated as follows:

Here, the Officers were responding to a report of an alleged attempted robbery involving a firearm and the Complainant's description of the suspect. Mr. Morrison was searched by an unidentified Cleveland Police officer and this search fell within the "search incident to a lawful arrest" exception. Plaintiff has failed to carry his burden to overcome the qualified immunity and establish the deprivation of a federally protected constitutional right. The court finds that sufficient probable cause existed and there is no evidence that the Officers acted in bad faith. The search incident to a lawful arrest was conducted by CDP Officers. Furthermore, a private entity on its own cannot deprive a citizen of his constitutional rights under §1983. *See Manley v. Paramount's Kings Island*, S.D.Ohio No. 1:06-CV-634, 2007 U.S. Dist. LEXIS 84564, at * 15 (Nov. 15, 2007). The facts indicate that Cleveland Police Officers conducted the arrest and search, as such, Plaintiffs §1983 claims against all the named Defendants are hereby dismissed.

* * *

Specifically, as to Defendants Rock Ohio Caesars Cleveland LLC, the Horseshoe Casino, Joan Peloso, Steven Barnes and Jason Arrington, there are no facts demonstrating that any of the Casino Defendant employees were involved in the alleged arrest and detention or search of the vehicle. There are no facts demonstrating that the casino or its employees acted as if they held authority under the law or violated Mr. Morrison's civil rights under 42 U.S.C. 1983. The arrest and search was conducted by Cleveland Police Officers. As such, all of Plaintiff's claims as to Defendants Rock Ohio Caesars Cleveland LLC, the Horseshoe Casino, Joan Peloso, Steven Barnes and Jason Arrington are hereby dismissed.

{¶ 17} The appellants now appeal from the trial court's judgment.

## II. Law and Analysis

{¶ 18} Collectively, the appellants' first, second, third, and fourth assignments of error challenge the trial court's judgment awarding summary judgment in favor of the appellees. Because these assigned errors raise related issues, we consider them together.

### A. Standard of Review

{¶ 19} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶ 20} Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

{¶ 21} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The

nonmoving party must then present evidence that some issue of material fact remains for the trial court to resolve. *Id.*

{¶ 22} With the foregoing standard in mind, we now consider the trial court's decision to grant summary judgment in favor of the appellees.

## B. The Appellants' Section 1983 Claim

{¶ 23} In this case, the appellants' complaint sought relief under 42 U.S.C. 1983, alleging that the defendants "acting under color of law, arrested, detained, and searched [Morrison] without probable cause" in violation of the Fourth Amendment.

{¶ 24} 42 U.S.C. 1983 states, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *.

{¶ 25} Section 1983 provides a civil remedy to persons whose federal rights have been violated by governmental officials. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), citing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds*; *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "To prevail on a claim under Section 1983, a plaintiff must prove two essential elements: (1) that he or she was deprived of a right, privilege, or immunity secured by the United States Constitution or federal law and (2) the deprivation was caused by a person acting

under color of state law." *Meekins v. Oberlin*, 8th Dist. Cuyahoga No. 107636, 2019-Ohio-2825, ¶ 39, citing *1946 St. Clair Corp. v. Cleveland*, 49 Ohio St.3d 33, 34, 550 N.E.2d 456 (1990); *Harris v. Sutton*, 183 Ohio App.3d 616, 2009-Ohio-4033, 918 N.E.2d 181, ¶ 20 (8th Dist.); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.1995).

{¶ 26} Public officials, including police officers and deputy sheriffs, who perform discretionary functions are shielded from liability for civil damages in a Section 1983 action by qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The test is one of "objective reasonableness" that requires a "reasonably competent public official [to] know the law governing his conduct." *Id.*

{¶ 27} The plaintiff bears the burden of showing that government officials are not entitled to qualified immunity. *Untalan v. Lorain*, 430 F.3d 312, 314 (6th Cir.2005). If the plaintiff fails to demonstrate that a constitutional right was violated or that the right was clearly established, he or she will have failed to carry her burden. *Summerville v. Forest Park*, 195 Ohio App.3d 13, 2011-Ohio-3457, 958 N.E.2d 626, ¶ 18 (1st Dist.), citing *Chappell v. Cleveland*, 585 F.3d 901, 907 (6th Cir.2009).

{¶ 28} In this case, there is no dispute that the defendant officers, though acting in their capacity as employees of a private corporation at the time of the events giving rise to this lawsuit, were performing police powers traditionally reserved to the state. On appeal, however, the appellants reiterate their argument that there

remain questions of fact regarding "whether Atlantis Security employees had probable cause to arrest [Morrison] and later search his car."  The appellants contend that "assuming the appellees had the right to approach [Morrison], detain him temporarily to pat him down for a weapon, and question him about his knowledge of the alleged crime, they did not have probable cause to arrest him." According to the appellants,

> At best [the Atlantis Security employees] merely had a "hunch" a crime had been committed and Morrison was their guy.  Being black and wearing an [orange] shirt does not constitute probable cause to arrest an unarmed man.

{¶ 29} Thus, the crux of the appellants' position depends on whether there was probable cause to detain, arrest, and subsequently search Morrison and his vehicle.

### 1. Individual Assessment of Conduct

{¶ 30} Before assessing whether constitutional violations were committed absent probable cause, we must first clearly define the role of each defendant officer in an effort to clearly define his or her legal obligations to Morrison.  This is necessary in the context of qualified immunity because "[e]ach defendant's liability must be assessed individually based on his [or her] own actions."  *Binay v. Bettendorf,* 601 F.3d 640, 650 (6th Cir.2010).  This individualized assessment "ensure[s] that a defendant's liability is assessed based on his [or her] own individual conduct and not the conduct of others."  *Pollard v. Columbus*, 780 F.3d 395, 402 (6th Cir.2015).  In conducting this assessment, we acknowledge that "[a]s a general rule, mere presence at the scene of [the alleged constitutional violation],

without a showing of direct responsibility for the action, will not subject an officer to liability." *Binay* at 650; *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

{¶ 31} In this case, the evidence reflects that, at the very most, Officers Schulte, Allen, and Tell were merely present at the time Morrison was detained, searched, and arrested. Similarly, the officers merely observed the search of Morrison's vehicle, which was performed by on-duty Cleveland police officers.

{¶ 32} In this regard, Officer Tell averred, in relevant part:

2. That on September 13, 2013, I was employed as a police officer in the City of Cleveland, Ohio and was working secondary employment at the Horseshoe Casino for The Atlantis Security Company;

3. That on September 13, 2013, I was employed by The Atlantis Security Company and was wearing my City of Cleveland uniform in compliance with General Police Order, Cleveland Division of Police No. 1.1.23 (effective 03/01/02 and revised June 29, 2010);

4. That on September 13, 2013 I was performing secondary employment as authorized by the Chief of Police and Director of Public Safety for the City of Cleveland;

* * *

6. That on September 13, 2013 that I was standing outside of the Horseshoe Casino on Ontario and Prospect when I saw Casino security run towards the parking garage across the street;

7. That I went to the welcome center and asked what was going on and was informed that there was a complaint that there was an attempted robbery with use of a gun in the parking garage;

8. I located another officer that had a radio and went across the street to help search the parking garage;

9. We located the casino security guards on the second floor stairwell when we heard over the radio that the suspect had been located in the casino;

10. I remained in the parking garage to make sure the area was secure and that there weren't others involved;

11. That a City of Cleveland police zone car returned to the parking garage and the suspect's car was searched;

12. That at no time did participate in or conduct search of the suspect or the suspect's vehicle;

13. That I understand now that the suspect's name was Willie Morrison.

Officer Tell reiterated during his deposition that he was in the parking garage at the time Morrison was identified. In addition, while Officer Tell testified that he looked through the windows of Morrison's vehicle to determine whether a gun was in "plain sight," he did not participate in the search of the interior of Morrison's vehicle, stating "whoever searched his car, it wasn't me."

{¶ 33} Similarly, Officer Allen averred, in relevant part:

2. That on September 13, 2013 I was employed as a police officer in the City of Cleveland, Ohio and was working secondary employment at the Horseshoe Casino for The Atlantis Security Company;

3. That I am currently a Sergeant in the Cleveland Police Department;

4. That on September 13, 2013 I was employed by The Atlantis Security Company and was wearing my City of Cleveland uniform in compliance with General Police Order, Cleveland Division of Police No. 1.1.23 (effective 03/01/02 and revised June 29, 2010);

5. That on September 13, 2013 I was performing secondary employment as authorized by the Chief of Police and Director of Public Safety for the City of Cleveland;

* * *

7. That I responded to a call overheard on a radio transmission that there was a complaint of a suspect with a gun who had approached someone in the parking garage across the street from the casino;

8.  That I ran to the parking garage and began to search in an effort to locate the suspect;

9.  That after checking the different levels of the parking garage and the stairwells, I was unable to locate the suspect;

10.  That upon returning to the casino I arrived on the second floor and the suspect had already been handcuffed and was escorted to a zone police car in the front of the casino;

11.  That zone cars are operated by City of Cleveland police officers who are on-duty for the City of Cleveland;

12.  That the secondary employment at the casino does not authorize use of nor does it entail the use of a vehicle;

13.  That I did not conduct a search of the suspect;

14.  That at no time did I participate in or conduct a search of the suspect's vehicle;

15.  That I understand now that the suspect's name was Willie Morrison.

{¶ 34} Officer Schulte did not submit an affidavit. However, Officer Schulte testified at his deposition that while he was present at the time Morrison was escorted out of the casino, he did not participate in his detention or the search of his vehicle. While the casino incident report states that Officer Schulte participated in the effort to investigate the reported activity, the evidence, including the surveillance video footage, unquestionably demonstrates that Officer Schulte did not detain, arrest, or search Morrison or his vehicle.

{¶ 35} Under these circumstances, we are unable to conclude that Officers Tell, Allen, or Schulte bore responsibility for the actions of the on-duty Cleveland police officers. As demonstrated by the evidence, their involvement in the case was

limited to their initial attempt to locate the described suspect, and their subsequent presence at the time Morrison was detained, arrested, and searched. There is no evidence to suggest the officers were acting in a supervising role or otherwise directed the actions of the on-duty police officers. Moreover, the appellants have not presented evidentiary quality materials to raise genuine issues of material fact as to these officers' role in this case. Thus, we find Officers Tell, Allen, and Schulte acted within the scope of their official responsibilities and did not deprive Morrison of a "clearly established statutory or constitutional rights of which a reasonable person would have known." Accordingly, the appellants have failed to meet their burden of showing that Officers Tell, Allen, and Schulte are not entitled to qualified immunity.

{¶ 36} Given the limited scope of their involvement in this matter, an assessment of probable cause is immaterial to our determination that Officers Tell, Allen, and Schulte are entitled to judgment as a matter of law on the appellants' Section 1983 claim.

{¶ 37} Officer Maye's participation in this case, however, requires further inquiry. In her affidavit submitted in support of summary judgment, Officer Maye concedes that she was present at the time Morrison was located and that she "did touch the suspect when he was being detained and when he was being led to the zone car." We recognize that Officer Maye averred that (1) she did not detain the suspect, (2) she did not handcuff the suspect, (3) she did not conduct a search of the suspect, and (4) did not conduct the search of the suspect's vehicle. However, the evidence

attached to the appellants' brief in opposition rebuts Officer Maye's characterization of her involvement in this matter.

{¶ 38} In relevant part, the video surveillance footage submitted by the appellants establishes that Officer Maye participated in the initial detention of Morrison. She grabbed his left arm and assisted an on-duty police officer in moving Morrison against a nearby slot machine. At that time, a second on-duty police officer handcuffed Morrison. Officer Maye then stepped away and was merely present while Morrison was searched for weapons by the on-duty officers. Thereafter, the video depicts Officer Maye holding Morrison's left arm as he is escorted out of the casino while handcuffed and surrounded by approximately 14 police officials. Once Morrison and the officers reached the escalators, however, an unidentified officer replaced Officer Maye in escorting Morrison out of the casino and towards a parked patrol vehicle. During her deposition, Officer Maye testified that she then walked to the parking garage where Morrison's vehicle was located. Contrary to the averments rendered in her affidavit, Officer Maye testified that she participated in the search of Morrison's vehicle, stating that she "look[ed] between the seats" and "look[ed] around underneath the seat by the tires, the outer parts of the vehicle." Moreover, Officer Maye admitted that she "participated in the search of the car even though [she] didn't know if [Morrison] consented to it and there was no warrant."

{¶ 39} Given the scope and nature of Officer Maye's individual conduct, we must assess whether appellants have demonstrated that Morrison was deprived of a

clearly established constitutional rights based on Officer Maye's participation in the detention and removal of Morrison inside the casino, and the subsequent search of Morrison's vehicle.

## 2. Fourth Amendment Principles

{¶ 40} The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 14 of the Ohio Constitution contains nearly identical language and provides the same protection as the Fourth Amendment to the United States Constitution. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette*, 80 Ohio St.3d 234, 238-239, 685 N.E.2d 762 (1997).

{¶ 41} "The 'basic purpose of [the Fourth] Amendment' * * * 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" *Carpenter v. United States*, 585 U.S __, 138 S.Ct. 2206, 2213, 201 L.Ed.2d 507 (2018). Searches and seizures conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶ 42} One well-known exception to the Fourth Amendment's warrant requirement is an investigative stop. In *Terry v. Ohio*, the United States Supreme Court held that an officer may stop an individual when the officer has a reasonable suspicion, supported by specific and articulable facts and rational inferences from those facts, that the individual is engaged in criminal activity. *Id.*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion justifying a *Terry* stop requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Cleveland v. Maxwell*, 8th Dist. Cuyahoga No. 104964, 2017-Ohio-4442, ¶ 19, quoting *Terry* at 27. Courts reviewing whether an officer had a reasonable articulable suspicion must consider the totality of the circumstances "'as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Id.*, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 43} Once a lawful investigatory stop has been made, a police officer may conduct a limited protective search for concealed weapons if the officer reasonably believes that the suspect may be armed or a danger to the officer or to others. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). "'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *.'" *Id.* at 408, quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

{¶ 44} To justify a pat-down search, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from

those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.   However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27; *see also State v. Smith*, 56 Ohio St.2d 405, 407, 384 N.E.2d 280 (1978).   The totality of the circumstances must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Andrews* at 87-88, citing *State v. Freeman*, 64 Ohio St.2d 291, 295, 414 N.E.2d 1044 (1980).

{¶ 45} Furthermore, a warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment.  *United States v. Watson*, 423 U.S. 411, 427, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).   When a police officer makes a lawful arrest, a warrantless search of the arrested person is justified to discover any weapons that the arrestee might seek to use and to prevent the concealment or destruction of evidence.  *State v. Murrell*, 94 Ohio St.3d 489, 491, 2002-Ohio-1483, 764 N.E.2d 986; *Chimel v. California*, 395 U.S. 752, 762-763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

{¶ 46} Finally, it is well settled that a warrantless search of an operational automobile, where police officers have probable cause to believe such vehicle contains evidence of a crime, is one of the well-recognized exceptions to the constitutional requirement of a search warrant.  *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir.2006), citing *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999), and *United States v. Magluta*, 418 F.3d 1166, 1182

(11th Cir.2005). Under the automobile exception, probable cause to search a vehicle exists, if under the totality of the circumstances, "'there is a fair probability that contraband or evidence of a crime will be found' in a vehicle." *Id.*, citing *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir.2002).

{¶ 47} Probable cause exists where the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Thus, "[a] police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000); *see also Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir.2015), quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶ 48} Because probable cause "deals with probabilities and depends on the totality of the circumstances," *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 243-244, fn. 13. Consequently, "[p]robable cause 'is not a high bar.'" *Dist. of Columbia v. Wesby*, ___ U.S. ___, 138 S.Ct. 577, 585-586, 199 L.Ed.2d 453 (2018), quoting *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014).

{¶ 49} Relevant to the circumstances presented in this case, we note that if an officer has a real belief and reasonable grounds for the belief, probable cause exists despite the ultimate outcome of the case. *Edvon v. Morales*, 8th Dist. Cuyahoga No. 106448, 2018-Ohio-5171, ¶ 25, citing *State v. Vance*, 2d Dist. Clark No. 2246, 1987 Ohio App. LEXIS 6972, 7 (May 11, 1987); *Bock v. Cincinnati*, 43 Ohio App. 257, 183 N.E. 119 (1st Dist.1931); *Ryan v. Conover*, 59 Ohio App. 361, 18 N.E.2d 277 (1st Dist.1937); *State v. Gross*, 7th Dist. Mahoning No. 01-C.A.-115, 2002-Ohio-3465, ¶ 35 (the accused does not actually have to commit a crime for the arresting officer to possess probable cause). Thus, hindsight "neither vindicates nor vitiates the actions of arresting officer." *State v. Wac*, 68 Ohio St.2d 84, 88, 428 N.E.2d 428 (1981).

{¶ 50} The existence of probable cause in a Section 1983 action generally "'presents a jury question, unless there is only one reasonable determination possible.'" *Parsons v. Pontiac*, 533 F.3d 492, 501 (6th Cir.2008), quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.2008), quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002); *see also Alman v. Reed*, 703 F.3d 887, 896 (6th Cir.2013) ("'When no material dispute of fact exists, probable cause determinations are legal determinations that should be made' by the court. * * * But '[i]f disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts.'"), quoting *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir.2005).

{¶ 51} In this case, the appellants' brief in opposition to summary judgment did not dispute that the responding officers had reasonable suspicion of criminal activity to initiate a lawful *Terry* stop. Citing *Terry*, the appellants stated, in pertinent part:

> Plaintiff will concede the defendants had the right to confront the plaintiff after it was announced by security [that] a black man tried to rob a woman at gun point and surveillance provided a description matching the plaintiff and the clothes he was wearing.

{¶ 52} For the first time on appeal, however the appellants suggest there was no lawful basis for the initial detention of Morrison based on this court's decision in *State v. Haynesworth*, 8th Dist. Cuyahoga No. 107231, 2019-Ohio-1986.

> It is well settled that arguments raised for the first time on appeal will not be considered by an appellate court. *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 679 N.E.2d 706 (1997). Motions for summary judgment are no different: "although we review summary judgment decisions de novo, 'the parties are not given a second chance to raise arguments that they should have raised below.'" *Hamper v. Suburban Umpires Assn.*, 8th Dist. Cuyahoga No. 92505, 2009-Ohio-5376, ¶ 27, quoting P*erlmutter v. People's Jewelry Co.*, 6th Dist. Lucas No. L-04-1271, 2005-Ohio-5031; *see also Hanley v. DaimlerChrysler Corp.*, 158 Ohio App.3d 261, 2004-Ohio-4279, 814 N.E.2d 1245, ¶ 23 (6th Dist.).

*Gardi v. Bd. of Edn.*, 8th Dist. Cuyahoga No. 99414, 2013-Ohio-3436, ¶ 27. Because the appellants raise this issue for the first time on appeal, this court is not obligated to consider it. Nevertheless, we find the appellants' argument to be without merit under the facts of this case.

{¶ 53} In *Haynesworth*, the Lakewood Police Department received an anonymous call that two men were walking in the middle of the street on Grace Avenue and were trying the handles of car doors. Approximately two minutes later,

a patrol car responded to the call and observed two males, later identified as Haynesworth and Wesley Jones, walking along the sidewalk on Detroit Avenue. The police cruiser pulled next to the sidewalk and the officers quickly exited the vehicle. The responding officers immediately approached Haynesworth and Jones and told them of the complaint and asked if they had identification. Haynesworth and Jones adamantly denied attempting to open any car doors. During the detention, the responding officers learned that Haynesworth was in possession of a firearm. He was placed under arrest for carrying a concealed weapon and having weapons while under disability. On appeal, this court determined that the officers did not possess a reasonable and articulable suspicion of criminal activity to initiate a *Terry* stop. This court noted that the stop was based on an anonymous call that did not provide any details regarding the suspects other than "two men" walking down Grace Avenue.

{¶ 54} As set forth in further detail below, we are unpersuaded by the appellants' reliance on *Terry* and *Haynesworth*. This is not a case involving an "anonymous tip" that lacked an indicia of reliability. Rather, the responding CPD officers had probable cause to perform a warrantless arrest based on reasonably reliable information that Morrison committed a crime. Accordingly, we find no merit to the appellants' attempt to challenge the initial investigatory stop of Morrison.

{¶ 55} We now turn to the primary focus of the appellants' brief in opposition to summary judgment. In their opposition brief the appellants' asserted

that, while the responding officers may have had a lawful basis to perform an investigatory stop, they lacked probable cause to conduct a warrantless arrest, thereby violating Section 1983. Based on the forthcoming, we find no merit to the appellants' position. Even if this court were to assume, without deciding, that the initial detention of Morrison turned into an arrest and that Officer Maye participated in the arrest by leading Morrison through the casino, we find Officer Maye was immune from liability under Section 1983.

{¶ 56} In the context of a civil claim under Section 1983, whether the unlawfulness of the officer's conduct was "clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Wesby*, ___ U.S. ___, 138 S.Ct. at 589, 199 L.Ed.2d 453 (2018), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011), quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.*, quoting *al-Kidd* at 741. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). As explained by the U.S. Supreme Court:

> It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials — like other officials who act in ways they reasonably believe to be lawful — should not be held personally liable.

*Anderson* at 641.

{¶ 57} Thus, the relevant inquiry "is the objective question whether a reasonable officer *could* have believed [the arrest] to be lawful, in light of clearly established law and the information the * * * officers possessed." (Emphasis added.) *Id.*; *Alcocer v. Mills*, 800 Fed.Appx. 860, 866 (11th Cir.2020) ("The inquiry for arguable probable cause, in contrast to actual probable cause, requires us to ask 'whether reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed.'"). *See also Wesby* at 591 ("Even assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [was] present.'"), quoting *Anderson* at 641.

{¶ 58} Considering the circumstances with which the responding officers were confronted in this case, we are unable to conclude that a reasonable official in Officer Maye's position would have known that his or her conduct was unlawful. In this case, the record demonstrates that on September 12, 2013, the CPD received a 911 call at 1:12:20 a.m. The CPD Incident Report reflects that the female victim stated that the suspect "approached her on the [south-east] corner 2nd level" of the parking garage. The suspect was described as a "[black male] 6ft, slender [build], [orange] striped polo shirt, jeans, hat, automatic." The victim further expressed that it was possible that the suspect has a "double tear drop" tattoo under his eye. However, the female victim indicated that she "didn't want to make a [report]."

{¶ 59} A radio dispatch was made at 1:12:21 a.m., and the first CPD zone car arrived at the scene within seconds. Each level of the parking garage was cleared by responding officers, and police units were instructed to enter the casino. The CPD Incident Report states the suspect was placed in custody by on-duty CPD unit Nos. 9626A and 9624. The suspect's vehicle was subsequently located on the second level of the parking garage and was searched by on-duty CPD unit Nos. 9626A and 9621. The CPD Incident Report confirms that the on-duty officers did not recover a weapon from inside the vehicle.

{¶ 60} As previously discussed, the record reflects that Officer Maye was working in her capacity as an off-duty police officer for Atlantis Security on the night of the incident. Officer Maye testified at her deposition that she was using a communication device that allowed Atlantis Security employees and casino security personnel to quickly share information about reported disruptions. Officer Maye explained, however, that the communication system did not allow her to hear direct remarks from the CPD dispatch.

{¶ 61} Between 1:00 to 1:30 a.m., Officer Maye received information through the internal communication system that there was "a male with a gun threatening." She was provided a description of the suspect and immediately began to search for him inside the casino. Officer Maye explained that the casino was made aware of the incident by the CPD dispatcher after "the female caller, the alleged victim, had called the city line." When asked whether she attempted to speak with the female victim, Officer Maye stated that she had left the casino parking garage,

but that "there were attempts to have her return back to the scene through the city dispatch." Officer Maye further testified that "the primary unit that [responded], I heard it over the radio, was trying to get the young lady who called it in to return back."

{¶ 62} Eventually, the suspect, later identified as Morrison, was located on the second floor, and Officer Maye aided an on-duty CPD officer in escorting the suspect out of the building. Relevant to this appeal, Officer Maye continuously emphasized that, as an off-duty officer serving in her capacity as an Atlantis Security employee, her role in this case was limited to "assisting" the on-duty CPD officers. She explained that the CPD primary unit was dispatched to the scene based on the information provided to the city dispatch, and that she assisted in the detention of Morrison until the CPD officers "took over" to handcuff him.

{¶ 63} With these facts in mind, we reiterate that to have probable cause the officer must have sufficient information derived from a reasonably trustworthy source to warrant a prudent man in believing that a felony has been committed and that it has been committed by the accused. *See Beck*, 379 U.S. at 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶ 64} In this regard, Ohio courts have recognized that "when information comes from a private citizen who claims to be a witness to or victim of a crime, 'the information carrie[s] with it an indicia of reliability and is presumed to be reliable even without specific corroboration of reliability.'" *State v. Fields*, 3d Dist. Wyandot No. 16-09-06, 2009-Ohio-5909, ¶ 16, quoting *State v. Pettry*, 4th Dist. Jackson Nos.

617 and 618, 1990 Ohio App. LEXIS 3407 (Aug. 9, 1990), citing 1 Wayne R. LaFave, *Search and Seizure*, Sec. 3.4(a) (2d Ed. 1987). *See also State v. Stewart*, 8th Dist. Cuyahoga No. 108701, 2020-Ohio-2720, ¶ 9, citing *United States v. Doyle*, 720 Fed.Appx. 271, 276 (6th Cir.2018) (probable cause to arrest existed where the eyewitness reported the offender threatened a victim with a gun, and the police corroborated the witness's description and confirmed the owner of the vehicle the defendant was driving was a convicted felon), citing *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir.1999), and *Rainer v. Lis*, 6th Cir. No. 92-2436, 1994 U.S. App. LEXIS 2190, * 2 (Feb. 7, 1994); *United States v. Charles*, 801 F.3d 855, 860 (7th Cir.2015) (911 dispatcher's report establishes beyond dispute that police officers had probable cause to believe that a defendant was carrying or had very recently carried a handgun he was not entitled to possess).

{¶ 65} In addition, the Ohio Supreme Court has stated that radio broadcasts are reliable sources of information:

> The police are entitled to use modern technological advances to cope with the use thereof by the modern-day criminal. The police radio is one of such advances and is the normal and logical method to alert law enforcement officers in surrounding areas that a crime has been committed and a suspect is wanted. Information received on a police broadcast is in the nature of an official communication, and ordinarily it must be considered as a trustworthy source of information.
>
> A police officer necessarily relies on the information he receives over the police radio, and upon the receipt of such information it is the duty of the officer to act and act quickly. And, where the information is such as to give the officer reasonable grounds to believe a felony has been committed, then he has probable cause to make an arrest.

*State v. Fultz*, 13 Ohio St.2d 79, 81, 234 N.E.2d 593 (1968). In *Fultz*, the radio broadcast that was relied on stated, "that [defendant] had assaulted persons in a trailer court with a gun * * *; that he was armed; and that a warrant had been issued for his arrest." *Id.* at 82. The court concluded that "certainly, with such information in his possession the officer had probable cause to make the arrest." *Id.*

{¶ 66} Finally, "a general description, absent any distinguishing characteristics, is insufficient, standing alone, to establish probable cause since several people could conceivably fit that description." *State v. Marshall*, 8th Dist. Cuyahoga No. 39590, 1979 Ohio App. LEXIS 11339, * 10 (Nov. 15, 1979). However, this court has recognized that the description may be a relevant factor in assessing an officer's probable cause determination where the person matching the suspect's description is also found in close proximity to the scene of the crime. *Id.*

{¶ 67} Under the totality of these circumstances, we conclude that *actual* probable cause existed in this case. That is, the facts and circumstances within Officer Maye's knowledge were sufficient to warrant a prudent person, or one of reasonable caution, in believing that Morrison committed a criminal offense. Here, the CPD received an emergency call indicating that a female victim reported being approached by an armed man in the casino's parking garage. The incident was designated by the CPD as a "robbery." That information was dispatched to on-duty CPD officers, who quickly arrived at the scene and located an individual, later identified as Morrison, who matched the description provided to the CPD and was in close proximity to the scene of the alleged felony offense. The evidence

demonstrates that the on-duty officers served as the primary investigators and that, at the very most, a single Atlantis Security employee assisted the on-duty officers, using the information furnished to the casino by the CPD dispatcher.

{¶ 68} Given the nature of the alleged criminal conduct, the source of the allegations, and the need to act swiftly, we find the on-duty officers who arrived at the scene and placed Morrison in handcuffs, had sufficient information to believe Morrison had committed a felony offense. Effective law enforcement cannot be conducted unless police officers can act on the directions and information transmitted by other officers. *Pettry,* 4th Dist. Jackson Nos. 617 and 618, 1990 Ohio App. LEXIS 3407, * 20 (Aug. 9, 1990). It reasonably follows, therefore, that at the moment Officer Maye determined it was necessary to assist the primary officers in the detention and removal of Morrison, she could not "be expected to cross-examine [her] fellow officers about the foundation for the transmitted information." *Id. See also State v. Henderson*, 51 Ohio St.3d 54, 554 N.E.2d 104 (1990), syllabus ("information supplied by officers or agencies engaged in a common investigation with an arresting officer may be used to establish probable cause for a warrantless arrest").

{¶ 69} Having found actual probable cause, it reasonably follows that, in the context of a Section 1983 claim, an objectively reasonable police officer could have concluded that probable cause was present in this case. This same reasonable police officer could have concluded that it was lawful to search Morrison incident to his arrest and that there was probable cause to believe that the evidence of the suspected

robbery would be discovered in his vehicle. Accordingly, we conclude that Officer Maye is shielded by qualified immunity.

### 3. Private Entities

{¶ 70} We likewise find that the trial court did not err by granting judgment on the Section 1983 claim in favor of the private entities, Atlantis Security and Rock Ohio.

> The issue of whether an employer can be held liable under § 1983 for the actions of an employee usually arises in the context of municipal liability for the acts of its employees. A municipality cannot be held liable under § 1983 on the basis of respondeat superior liability. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, in order to be held liable for a constitutional violation, the municipality's policy must be the "moving force" behind the violation. *Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* These same principles apply to a private corporation which is sued under § 1983 on a respondeat superior or vicarious liability theory. *See Street v. Corrs. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

*Nerswick v. CSX Transp., Inc.*, 692 F. Supp.2d 866, 878 (S.D.Ohio 2010).

{¶ 71} Because the appellants failed to carry the burden to overcome the defendant officers' qualified immunity and establish the deprivation of a federally protected constitutional right or statutory right, it likewise follows that Atlantis Security and Rock Ohio — private entities — cannot be liable under a failure to train theory. *See Cannavino v. Rock Ohio Caesars Cleveland, L.L.C.*, 2017-Ohio-380, 83 N.E.3d 354, ¶ 38 (8th Dist.). Similarly, given the existence of probable cause in this matter, there is no basis to suggest the casino employees, Barnes, Peloso, and

Arrington — who were not acting under color of state law — can be held liable under Section 1983.

## C. The Appellants' State Law Claims
### 1. Liability of Defendant Officers

{¶ 72} The appellants state that "the essence of [their] lawsuit is the civil rights claim" under Section 1983. As such, the appellants assert that "since there is a question of fact as to whether there was probable cause to detain, arrest, and subsequently search Morrison's car," the trial court erred in dismissing their state law claims for false arrest and detention, assault and battery, conversion, and loss of consortium on the basis of immunity.

{¶ 73} With respect to these tort claims, Officers Maye, Schulte, Allen, and Tell argued in their motion for summary judgment that they are entitled to statutory immunity pursuant to R.C. 2744.03(A)(6).

{¶ 74} Generally, individual employees of a political subdivision are immune in their individual capacities from civil actions "to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function[.]" R.C. 2744.03(A). Therefore, we presume that an employee of a political subdivision has immunity. *Knox v. Hetrick*, 8th Dist. Cuyahoga No. 91102, 2009-Ohio-1359, ¶ 21.

{¶ 75} In Ohio, a "'police officer * * * cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established.'" *Hunt v. Cleveland*, 8th Dist. Cuyahoga No. 103468,

2016-Ohio-3176, ¶ 25, quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80, 658 N.E.2d

814 (1st Dist.1995).  In this regard, R.C. 2744.03(A)(6) provides that

> an employee is immune from liability unless (1) the employee acted
> outside the scope of his or her employment or official responsibilities,
> (2) the employee acted with malicious purpose, in bad faith, wantonly,
> or recklessly, or (3) the Revised Code expressly imposes liability on the
> employee.

Each officer's conduct is typically analyzed separately when determining whether

immunity applies.  *See Estate of Graves v. Circleville*, 179 Ohio App.3d 479, 2008-

Ohio-6052, 902 N.E.2d 535, ¶ 29-35 (4th Dist.) (analyzing whether the two officers

and the dispatcher were entitled to immunity separately).

{¶ 76} On this record, there is no indication that the defendant officers acted

manifestly outside the scope of their employment or official responsibilities.  While

performing their secondary employment, "[p]olice officers have arrest powers

regardless of whether they are working regular duty, special duty, or are off duty."

*Cannavino*, 8th Dist. Cuyahoga No. 103566, 2017-Ohio-380, at ¶ 24, citing *Ingles v.*

*W. Pancake House*, 10th Dist. Franklin No. 77AP-643, 1977 Ohio App. LEXIS 7507,

* 7 (Dec. 27, 1977).  Thus, a police officer who is working special duty is still

performing a government function.  *Id.*, citing *Wooster v. Arbenz*, 116 Ohio St. 281,

284-285, 156 N.E. 210 (1927); s*ee also Cooper v. Tommy's*, 10th Dist. Franklin No.

09AP-1078, 2010-Ohio-2978, ¶ 8 (recognizing that a police officer working special

duty was performing "a governmental function" and working in a governmental or

official capacity).  Therefore, the first exception to statutory immunity does not

apply in this case. Likewise, there is no evidence that a section of the Revised Code expressly imposes civil liability on the individual defendants.

{¶ 77} The crux of the dispute, therefore, is whether the exception for malicious, bad faith, and wanton or reckless acts or omissions set forth in R.C. 2744.03(A)(6)(b) applies. One acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm. *Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 139, 656 N.E.2d 1035 (9th Dist.1995). Malice includes "the willful and intentional design to do injury, or the intention or desire to harm another through conduct which is unlawful or unjustified." *Shadoan v. Summit Cty. Children Servs. Bd.*, 9th Dist. Summit No. 21486, 2003-Ohio-5775, ¶ 12.

{¶ 78} Bad faith is defined as a "dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive or ill will." *Lindsey v. Summit Cty. Children Servs. Bd.*, 9th Dist. Summit No. 24352, 2009-Ohio-2457, ¶ 16. A person acts wantonly if that person acts with a complete "failure to exercise any care whatsoever." *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994).

{¶ 79} One acts recklessly if one is aware that one's conduct "creates an unreasonable risk of physical harm to another[.]" *Thompson v. McNeill*, 53 Ohio St.3d 102, 104, 559 N.E.2d 705 (1990). Recklessness is more than mere negligence in that the person "must be conscious that his conduct will in all probability result in injury." *Fabrey* at 356.

{¶ 80} Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury. *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005-Ohio-6407, 843 N.E.2d 234 (6th Dist.). However, where the record lacks evidence demonstrating that the political subdivision employee acted in such a manner, the trial court correctly grants summary judgment. *Id.* Therefore, a trial court may not grant summary judgment on the basis of R.C. 2744.03(A)(6) immunity unless reasonable minds can only conclude that the employee did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. If reasonable minds could disagree on these issues, a court may not grant the employee summary judgment based on statutory immunity. *Id.*

{¶ 81} As stated, the appellants' claims for false arrest and detention, assault and battery, conversion, and loss of consortium, are predicated on the argument that the detention, arrest, and search of Morrison and his vehicle was performed without probable cause. In the absence of justifiable probable cause, the appellants suggest that the defendant officers acted with a malicious purpose, which (1) subjected Morrison to various indignities and humiliation, (2) constituted an unlawful restraint that caused Morrison "much pain and mental anguish," (3) represented a wrongful conversion of Morrison's vehicle, and (4) resulted in a loss of consortium and companionship between Morrison and his wife. According to the appellants, the lack of probable cause removes the shield provided by R.C. 2744.03(A)(6).

{¶ 82} While the absence of probable cause may have raised genuine issues of material fact in this case, we do not adopt the appellants' position that the absence

of probable cause equates to a showing of malicious purpose. *See Tommy's*, 10th Dist. Franklin No. 09AP-1078, 2010-Ohio-2978, at ¶ 9 ("Lack of probable cause to arrest may allow an inference that the law enforcement officer acted with malice, but a mere lack of probable cause is not, itself, sufficient to make a determination that the officer acted with malice."), citing *Johari v. Columbus Police Dept.*, 186 F.Supp.2d 821, 832 (2002) ("Under § 2744.03(A)(6), the liability of a police officer does not depend solely upon whether his or her determination of probable cause is later found to be incorrect but also upon whether the officer acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" in making that determination.).

{¶ 83} Nevertheless, having previously found the actions taken against Morrison were made with sufficient probable cause, we agree with the trial court's conclusion that there are no facts demonstrating that the defendant officers acted outside of their official responsibilities, or acted with malice purpose, in bad faith, or in a wanton or reckless manner to fall within the exceptions set forth under R.C. 2744.03(A)(6). As previously discussed, Officers Tell, Schulte, and Allen were merely present at the scene and had no direct involvement in the arrest and search of Morrison. And, to the extent Officer Maye participated in the detention, arrest, and subsequent search of Morrison and his vehicle, the evidence demonstrates that she acted in good faith, with probable cause, and performed her duties in this case with professionalism. The defendant officers are statutorily immune from liability pursuant to R.C. 2744.03(A)(6).

{¶ 84} Construing the evidence in a light most favorable to the appellants, we find there are no genuine issues of material fact remaining and that Officers Maye, Tell, Schulte, and Allen are entitled to judgment as a matter of law on the appellants' state law claims for false arrest and dentition, assault and battery, conversion, and loss of consortium.

{¶ 85} Notwithstanding the trial court's proper application of R.C. 2744.03(A)(6), we further find the appellants' state law claims against the defendant officers fail as a matter of law.

{¶ 86} Under Ohio law, an action for false arrest includes false imprisonment. *Mayes v. Columbus*, 105 Ohio App.3d 728, 746, 664 N.E.2d 1340 (10th Dist.1995). In order to prevail on a claim for false arrest or imprisonment, the plaintiff must demonstrate: "(1) the intentional detention of the person and (2) the unlawfulness of the detention." *Hodges v. Meijer, Inc.*, 129 Ohio App.3d 318, 717 N.E.2d 806 (12th Dist.1998). Thus, an arrest based on probable cause is a lawful detention and, thereby, serves to defeat both a claim of false arrest and a claim of false imprisonment.

{¶ 87} As stated, the record indicates Morrison's arrest was effectuated by on-duty Cleveland police officers who are not named parties in this matter. However, to the extent the appellants contend the Atlantis Security employees participated in Morrison's arrest, we find the false arrest claim cannot be maintained given our determination that there existed probable cause to detain, arrest, and search Morrison.

{¶ 88} Next, the defendant officers did not commit assault or battery as the appellants allege. An assault is defined as the willful threat or attempt to harm or touch another offensively, coupled with a definitive act by one who has an apparent present ability to do harm or to commit the offenses of touching. *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 614 N.E.2d 1148 (10th Dist.1993). A battery is defined as a harmful or offensive touching of another person. *Love v. Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166 (1998). To prove assault and battery under Ohio law, the plaintiff must establish that the defendants unlawfully touched him with the intent of inflicting injury or creating the fear of injury. *Blankenship v. Parke Care Ctrs.*, 913 F.Supp. 1045, 1052 (S.D.Ohio 1995). The appellants have provided no facts to support such a claim. "Officers are privileged to commit battery when making a lawful arrest, but the privilege is negated by the use of excessive force." *Alley v. Bettencourt*, 134 Ohio App.3d 303, 313, 730 N.E.2d 1067 (4th Dist.1999). The battery count contains no allegation that the defendant officers used excessive force when Morrison was restrained and handcuffed. Any contact with Morrison was incident to a lawful arrest based on probable cause. This contact certainly was not malicious or wanton. And Officers Tell, Allen, and Schulte did not touch Morrison at all. Therefore, the defendant officers are entitled to summary judgment on this claim.

{¶ 89} Moreover, the appellants cannot maintain a claim of conversion. In this case, the appellants' conversion claim alleged that the unlawful search of Morrison's vehicle "prevented [him] from using said automobile and represented

wrongful conversion of said automobile." The complaint further alleged that Morrison's vehicle sustained damage during the unlawful search, thereby diminishing the value of the vehicle by "approximately $10,000."

> Conversion is "the wrongful control or exercise of dominion over the property belonging to another consistent with or in denial of the rights of the owner." *Tabar v. Charlie's Towing Serv., Inc.*, 97 Ohio App.3d 423, 427-428, 646 N.E.2d 1132 (8th Dist.1994), citing *Bench Billboard Co. v. Columbus*, 63 Ohio App.3d 421, 579 N.E.2d 240 (10th Dist. 1989). A party alleging conversion must establish (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) the possessor refused to deliver the property to its rightful owner. *Pointe at Gateway Condo. Owner's Assn. v. Schmelzer*, 8th Dist. Cuyahoga Nos. 98761 and 99130, 2013-Ohio-3615, ¶ 64, citing *Tabar* at 427-428.

*Stamatopoulos v. All Seasons Contracting Inc.*, 8th Dist. Cuyahoga Nos. 107783 and 107788, 2020-Ohio-566, ¶ 37.

{¶ 90} Under the circumstances presented in this case, we find the conversion claim fails as a matter of law. Notwithstanding the fact that Morrison was not the owner of the vehicle, we find the responding officers, including Officer Maye, had probable cause to search the vehicle for evidence of criminal activity. The alleged crime took place in the parking garage where the vehicle was discovered a short time later. The officers reasonably believed the vehicle could contain evidence of the purported robbery. Accordingly, the responding officers, including Officer Maye, did not "*wrongfully* control or exercise dominion over [the vehicle]" during the lawful search.

{¶ 91} Finally, we note that "'a claim for loss of consortium is derivative in that the claim is dependent upon the defendants having committed a legally

cognizable tort upon the spouse who suffers bodily injury.'" *Grassia v. Cleveland*, 8th Dist. Cuyahoga No. 93647, 2010-Ohio-2483, ¶ 26, fn. 8, quoting *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93, 585 N.E.2d 384 (1992). Because Morrison has failed to prove any of his claims against the defendants, his wife's loss of consortium claim must also fail.

## 2. Liability of Atlantis Security and Rock Ohio

{¶ 92} The appellants' claims against both Atlantis Security and Rock Ohio are predicated on the nature of their relationship with, and control of, the defendant officers. The appellants contend that Atlantis Security and Rock Ohio are jointly and severally liable for the tortious conduct of the defendant officers.

{¶ 93} The Supreme Court has explained how vicarious liability is to be imposed:

> "[I]t is a fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence. * * * [T]he most common form of derivative or vicarious liability is that imposed by the law of agency, through the doctrine of respondeat superior." This doctrine of liability depends on the existence of control by a principal (or master) over an agent (or servant), terms that we have used interchangeably.

(Citations omitted.) *Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 20, quoting *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 255, 553 N.E.2d 1038 (1990), citing *Hanson v. Kynast*, 24 Ohio St.3d 171, 173, 494 N.E.2d 1091 (1986). As the Ohio Supreme Court has stated on another occasion,

> [g]enerally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior, but not for the negligence of an independent contractor over whom it

retained no right to control the mode and manner of doing the contracted-for work.

*Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994), citing *Councell v. Douglas*, 163 Ohio St. 292, 295-296, 126 N.E.2d 597 (1955). *See also* 2 Restatement of the Law 2d, Torts, Section 409 (1965) ("[T]he employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants").

{¶ 94} For an employer, such as Atlantis Security, to be vicariously liable under the doctrine of respondeat superior, the tort committed by the employee must be committed within the scope of employment. *Estate of Barney v. Manning*, 8th Dist. Cuyahoga No. 94947, 2011-Ohio-480, ¶ 9, citing *Osborne v. Lyles* 63 Ohio St.3d 326, 587 N.E.2d 825 (1992). And where the tort is intentional, the "behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed.'" *Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991), quoting *Little Miami R.R. Co. v. Wetmore*, 19 Ohio St. 110, 132 (1869).

{¶ 95} Regarding Rock Ohio and its employees, the appellants concede that "there is little evidence that [the casino] or its employees actually participated in the detention and arrest of Morrison and there is only some evidence that the [casino] employees were present when his car was searched." Nevertheless, the appellants contend that Rock Ohio and its employees are liable for the acts of Atlantis Security because the obligation to protect and secure the casino's patrons is a "non-delegable duty." *See* 2 Restatement of the Law 2d, Torts, Section 427 (1965) ("One who

employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.").

{¶ 96} Without addressing the appellants' various theories of liability, we find Atlantis Security and Rock Ohio, including its employees, Peloso, Barnes, and Arrington, are entitled to judgment as a matter of law on the appellants' state law claims. We recognize that

> An employee's immunity from liability is no shield to the employer's liability for acts under the doctrine of respondeat superior. * * * A private employer may still be liable even if the employee is personally immune, for the doctrine of respondeat superior operates by imputing to the employer the acts of the tortfeasor, not the tortfeasor's liability.

*State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d 1082, ¶ 28. However, having determined that the intentional tort claims pursued against each defendant officer also fail as a matter of law, it likewise follows that there is no basis to impose liability on Atlantis Security or Rock Ohio. *Comer*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 20 ("If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions.").

{¶ 97} Based on the foregoing, the appellants' first, second, third, and fourth assignments of error are overruled. The trial court's judgment granting summary judgment in favor of defendants-appellees is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
MICHELLE J. SHEEHAN, J., CONCUR