[Cite as *State v. Johnson*, 2022-Ohio-2773.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,              :

                                      No. 111040

    v.                               :

DARVON JOHNSON,                            :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 11, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-656902-B

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Jamielle Lamson-Buscho and Gregory Ochocki, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Jonathan Sidney, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} In this companion appeal, defendant-appellant, Darvon Johnson ("Johnson"), appeals the trial court's denial of his motion to suppress after pleading no contest to trafficking and two counts of drug possession.[1]

## I. Facts and Procedural History

{¶ 2} In April 2021, Johnson was charged with codefendant, Markwan Hall ("Hall"), in a three-count indictment. Count 1 charged each of them with trafficking and Counts 2 and 3 charged each of them with drug possession of marijuana and THC. The charges stem from marijuana and tetrahydrocannabinol ("THC") seized during a traffic stop by Ohio State Highway Patrol Trooper Dowler ("Trooper Dowler").

{¶ 3} Trooper Dowler completed a report as a result of the traffic stop. In his September 26, 2020 report, Trooper Dowler stated:

> On May 14, 2020 I was contacted by a confidential source about possible criminal activity. On May 14, 2020 at approximately 20:23 hours, I was contacted over the radio by plain clothes officers advising me there was a black Jeep Compass northbound on IR 71 around mile post 240 in the city of Cleveland driving at a high rate of speed. The plain clothes officers followed the Jeep in their unmarked vehicles. The Jeep was paced at 90 MPH in a 60 MPH zone. I responded to the area and observed the vehicle exit off onto W 150TH Street. After the vehicle exited, it made a right turn onto W 150TH. I activated my overhead pursuit lights and initiated a traffic stop. The driver of the vehicle pulled into the Speedway gas station parking lot and came to a stop. After the vehicle stopped, I approached the vehicle from the drivers side where I came in contact with the driver.

---

[1] This appeal is a companion case to *State v. Hall*, 8th Dist. Cuyahoga No. 111019.

When I made contact with the driver, I immediately smelled a strong odor of raw marijuana coming from inside the vehicle. I also noticed the driver who was later identified as Markwan Hall was overly nervous. His hands were shaking uncontrollably, and he was breathing heavy. I also noticed the front seat passenger who was later identified as Darvon Johnson, was also overly nervous. His hands were shaking and he was breathing heavy.

\* \* \*

Tpr Kelley and Tpr Hershman arrived on the scene for assistance. \* \* \* After Johnson exited the vehicle, Tpr Hershman patted him down for weapons and secured him in the right rear seat of his patrol car. After everybody was secured, we conducted a probable cause search of the vehicle. [D]uring the search we located a suitcase on the back seat that had Johnsons name on it. When we opened up the suitcase we found four vacuumed sealed bags containing what was believed to be marijuana. Along with the marijuana was vape cartridges, and marijuana edibles.

As we moved to the trunk we found another suitcase that [had] Halls name on it. When we opened up the suit case we found four vacuumed sealed bags of what we believed to be from our training and experiences marijuana. Along with the marijuana were vape cartridges, and marijuana edibles. After finishing the search I secured all the evidence and went back to my patrol car. I advised Hall of his rights. I asked him if he understood his rights, and he said yes. I asked him if the marijuana found in the suitcase belonged to him, and he said yes. I asked him if the marijuana, vape cartridges, and edibles in the other suitcase belonged to him and he said no. Tpr Hershman advised Johnson of his rights, he asked him if the marijuana belonged to him, and he said no. During conversation with Johnson he admitted to Tpr Hershman that all the contraband found cost around $15,000[.]

(Defendants' Joint Motion to Reveal Information Relayed to Officers from Confidential Informant, Sept. 8, 2021.)

{¶ 4} Johnson and Hall filed a joint motion to reveal the information relayed to Trooper Dowler from the confidential informant. The codefendants argued that the identity of the confidential informant in Trooper Dowler's report

must be revealed to establish whether this information formed the basis for the traffic stop and detention of Johnson and Hall.

{¶ 5} On September 20, 2021, the trial court held a hearing on the joint motion. Ohio State Highway Patrol Detective Dave Norman ("Detective Norman") testified that on May 14, 2020, he was working undercover and driving an unmarked vehicle in the area of Interstate 71 and Snow Road when he observed a black Jeep driving on the highway that passed him at a speed of somewhere "in the area of 70, 75 miles per hour." (Sept. 20, 2020, tr. 5-6.) Detective Norman testified that the speed limit in this area was 60 miles per hour. (Sept. 20, 2020, tr. 6.) He further testified that the Jeep cut across two of the highway lanes and exited at 150th Street. (Sept. 20, 2020, tr. 6.) Detective Norman followed the Jeep off the exit but did not take any action to engage a traffic stop because he was undercover. (Sept. 20, 2020, tr. 8.)

{¶ 6} In response observing the speeding Jeep, Detective Norman contacted Trooper Dowler. He advised Trooper Dowler that dark Jeep had passed him and cut off a lane of traffic. (Sept. 20, 2020, tr. 10.) Detective Norman testified that "it almost appeared they were running from the police." (Sept. 20, 2020, tr. 10.) With regard to the identity of the confidential informant that was involved in this case, Detective Norman testified that he was the confidential informant. (Sept. 20, 2020, tr. 10.)

{¶ 7} Trooper Dowler also testified at the hearing. He testified that he did not observe the Jeep speeding. (Sept. 20, 2020, tr. 23.) Rather, Detective Norman

informed him that the Jeep had been speeding. (Sept. 20, 2020, tr. 23.) Detective Norman also relayed that the codefendant exited at West 150th Street. (Sept. 20, 2020, tr. 24.) Trooper Dowler was stationary near the West 150th Street exit when he received Detective Norman's report of the speeding vehicle. (Sept. 20, 2020, tr. 40.) Trooper Dowler further testified that Detective Norman was the "plain clothes officer" and "confidential source" referred to in his report. (Sept. 20, 2020, tr. 31.) At the conclusion of the hearing, plaintiff-appellee, the state of Ohio, stipulated that Detective Norman was the "confidential source" referred to in Trooper Dowler's report.

{¶ 8} The next day, Johnson and Hall filed a joint motion to suppress the evidence seized from this traffic stop.[2] The codefendants argued that Trooper Dowler lacked reasonable, articulable suspicion to justify the initial stop and their detention. As a result, they argued that any evidence obtained during the search should be suppressed under the exclusionary rule. The state opposed the motion, and the trial court held a hearing on the matter on September 27, 2021. The following evidence was adduced at the hearing.

{¶ 9} On May 14, 2020, Johnson and Hall arrived at Cleveland Hopkins International Airport after traveling from California to Cleveland through Chicago. (Sept. 27, 2021, tr. 68.) The two men retrieved their luggage from baggage claim, got into their vehicle, and headed home to Pennsylvania. Trooper Dowler testified

---

[2] Johnson and Hall were represented by different defense counsel at the trial court.

that on that day, Detective Norman contacted him, describing a black Jeep driving at a high rate of speed of 90 miles per hour on Interstate 71. (Sept. 27, 2021, tr. 49-50, 52, 59.) The speed limit in that area is 60 miles per hour. (Sept. 27, 2021, tr. 49-50.) Trooper Dowler could not recall if he was stationary at the time he received the report from Detective Norman. (Sept. 27, 2021, tr. 72.) He further testified that he did not personally observe any traffic infractions by the black Jeep. (Sept. 27, 2021, tr. 70-71.)

{¶ 10} Trooper Dowler caught up to the vehicle and initiated a traffic stop of the vehicle at a gas station off the West 150th Street exit of Interstate 71. (Sept. 27, 2021, tr. 50-51.) The gas station was "approximately a mile and a half to two miles" from the location where Detective Norman indicated he observed the speeding vehicle. (Sept. 27, 2021, tr. 52.) When he pulled over the vehicle, he observed Hall as the driver of a black Jeep Compass and Johnson in the passenger seat. (Sept. 27, 2021, tr. 51, 55.) When asked by Trooper Dowler how fast they were going, Hall replied, "around 70." (Sept. 27, 2021, tr. 51.)

{¶ 11} Trooper Dowler further testified that when he pulled over the vehicle, he "smelled a strong odor of raw marijuana coming from inside the vehicle along with [Hall and Johnson] being overly nervous." (Sept. 27, 2021, tr. 52.) Trooper Dowler then ordered Hall out of the vehicle because of what he believed to be the smell of raw marijuana and searched the vehicle on that basis. (Sept. 27, 2021, tr. 66.) With regard to his training to detect marijuana, Trooper Dowler testified that he has been a K-9 handler for six years and carries marijuana with him every day.

(Sept. 27, 2021, tr. 53, 77.) Trooper Dowler's bodycam video was played at the hearing. In the video, Hall admits to travelling at a speed of 70 miles per hour and tells Trooper Dowler that he believes he has three pounds of marijuana in the vehicle.

{¶ 12} Detective Norman also testified at the suppression hearing. He testified that he did not remember if the Jeep was going 70 or 75 miles per hour. (Sept. 27, 2021, tr. 86.) Relying on a May 13, 2021 statement he emailed to the state regarding his observations on that day, Detective Norman then indicated that the Jeep was "flying past [him] * * * in excess of 85 miles per hour * * * [t]hen the Jeep cut multiple lanes * * * exited West 150th Street, * * * [d]idn't stop at a [red light] * * * [and then] it failed to use a turn signal." (Sept. 27, 2021, tr. 87-89.) He further testified that a "memorable aspect" of the stop was the Jeep's speed in excess of 85 miles per hour. (Sept. 27, 2021, tr. 98.) When questioned about the discrepancy in his accounts of the speed, Detective Norman acknowledged that he does not remember some of the details very well. (Sept. 27, 2021, tr. 98.)

{¶ 13} After viewing Trooper Dowler's body camera video, Detective Norman acknowledged that in contradiction to his testimony and written statement, the video indicates that the Jeep did stop at the red light upon exiting the highway and that the Jeep used a turn signal while turning at the light. (Sept. 27, 2021, tr. 91-92.) Detective Norman never indicated that he provided a description of the suspect vehicle more specific than "black Jeep."

{¶ 14} After the conclusion of the hearing, the trial court denied the joint motion to suppress. The trial court found that "[t]here was a reasonable basis to effectuate the traffic stop and based on the observations of Trooper Dowler about the smell of marijuana the search was justified." (Sept. 27, 2021, tr. 107-108.) Both Johnson and Hall then entered a no contest plea to the charges, as indicted. The trial court sentenced each of them to one year of community control sanctions on each count.

{¶ 15} Johnson now appeals, raising the following three assignments of error for review:

> **Assignment of Error One:** The trial court erred in denying [Johnson's] motion to suppress because prosecution failed to meet its burden in establishing sufficient reasonable articulable suspicion to justify the detention of [Johnson]
>
> **Assignment of Error Two:** The trial court erred in denying [Johnson's] motion to suppress because prosecution failed to meet its burden in establishing sufficient probable cause to justify the car search in this case
>
> **Assignment of Error Three:** [Johnson] received ineffective assistance of counsel to the extent this court finds that that trial counsel failed to adequately raise or preserve the above issues

## II. Law and Analysis

### A. Motion to Suppress

{¶ 16} In the first and second assignments of error, Johnson argues that the trial court erred in denying his motion to suppress because the state failed to establish sufficient reasonable and articulable suspicion to justify the traffic stop and sufficient probable cause to search the vehicle.

{¶ 17} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992). As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). "An appellate court reviews the trial court's application of the law to its factual findings under a de novo standard." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100, citing *Burnside* at ¶ 8.

{¶ 18} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio State Constitution protect right to be free from unreasonable searches and seizures. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). This protection applies to the stopping of motor vehicles and the seizing of its occupants. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), paragraph two of the syllabus.

{¶ 19} There are, however, exceptions to the Fourth Amendment's warrant protections. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d

1204, ¶ 7, citing *Prouse* at 663; *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶ 20} In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court found that to justify a particular intrusion, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21; *Mays* at ¶ 12. "The 'reasonable and articulable suspicion' analysis is based on the *collection* of factors, not on the individual factors themselves." (Emphasis sic.) *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 19. "When conducting the stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to investigate the reason for which the vehicle was initially stopped." *State v. Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274, ¶ 21, citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 17.

### 1. Traffic Stop

{¶ 21} Johnson argues that the trial court erred in finding reasonable suspicion for the traffic stop because the description of the suspect vehicle was insufficiently specific to justify the stop and the basis of the stop was wholly reliant

on Detective Norman's report of a speeding black Jeep since Trooper Dowler did not personally witness any traffic violations. He contends that this vague description is insufficiently particularized to justify the traffic stop, absent some minimal description of the occupants of the vehicle or other corroborating evidence that the vehicle Trooper Dowler observed was the same vehicle that Detective Norman observed speeding. Johnson notes that Trooper Dowler offered no testimony explaining why or how he came to believe that the Jeep he pulled over "approximately a mile and a half to two miles" from the location Detective Norman first observed it was the same Jeep identified by Detective Norman.

{¶ 22} In the instant case, Detective Norman testified that Hall was driving at least 10 miles over the posted 60 miles per hour speed limit. Detective Norman was in an unmarked vehicle; therefore, he communicated this information to Trooper Dowler. While there is some inconsistency regarding the vehicle's speed, Hall can be observed on the bodycam video admitting to Trooper Dowler that he was going 70 miles per hour.

{¶ 23} Trooper Dowler admitted that he did not witness the traffic violation. This is not fatal to the stop, however, because Detective Norman's report of a "speeding black jeep" gave Trooper Dowler a reasonable belief that a law had been broken. "Reasonable suspicion need not be based solely on the officer's personal observation and may be based on information provided by a citizen" or "other officers[.]" *Lyndhurst v. Brickel*, 8th Dist. Cuyahoga No. 72322, 1998 Ohio App. LEXIS 2334, 4 (May 28, 1998), citing *Beachwood v. Sims*, 98 Ohio App.3d 9, 14,

647 N.E.2d 821 (8th Dist.1994); *State v. Antill*, 91 Ohio App.3d 589, 590, 632 N.E.2d 1370 (4th Dist.1993); *State v. Stewart*, 8th Dist. Cuyahoga Nos. 109867, 109868, 2022-Ohio-199, ¶ 19, citing *Brickel*; *Sims*.

{¶ 24} Therefore, based on the foregoing circumstances, Trooper Dowler had a sufficient "reasonable suspicion" to justify further investigation of the black Jeep, and we find that the subsequent traffic stop was constitutionally valid.

### 2. Detention

{¶ 25} Johnson also argues there was insufficient reasonable, articulable suspicion to justify his detention because Detective Norman's testimony was "unreliable and incredible."

{¶ 26} We note that any potential inconsistency between the testimony and video evidence goes to the credibility of witnesses. As discussed above, "[w]hen the trial court rules on a motion to suppress, the credibility of the witness is a matter for the judge acting as the trier of fact." *Fanning*, 1 Ohio St.3d at 20, 437 N.E.2d 583. "[T]he trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8, citing *Mills*; *Cleveland v. Jones*, 8th Dist. Cuyahoga No. 107257, 2019-Ohio-1525, ¶ 19. "If the trial court's findings of fact are supported by competent, credible evidence, an appellate court must accept such findings." *State v. Howard*, 8th Dist. Cuyahoga No. 100887, 2014-Ohio-4682, ¶ 14, citing *State v. Kobi*, 122 Ohio App.3d 160, 168, 701 N.E.2d 420 (6th Dist.1997).

{¶ 27} Here, Johnson argues that the following two aspects of Detective Norman's testimony undermine a finding of reasonable suspicion: (1) the contradictions in Detective Norman's testimony and (2) no camera evidence to corroborate his observations. Johnson refers to testimony by Detective Norman that he observed a black Jeep driving "in the area of 70, 75 miles per hour" in a 60 mile-per-hour zone, and then a week later testified that he did not remember the Jeep's speed. He then testified that the Jeep was "flying past" and "blowing by" him in excess of 85 miles per hour and that the high rate of speed was "pretty memorable." He refers to Detective Norman's testimony regarding a written report that he previously provided to the state, in which he stated that he observed the Jeep exit the highway at West 150th Street, fail to stop at a red light, and fail to use a turn signal after exiting. When shown the body-camera video depicting that no such violations occurred, Detective Norman acknowledged that the Jeep in fact did stop at the red light and use a turn signal at that light.

{¶ 28} After reviewing the record, we conclude that it provides competent and credible evidence to support Johnson's detention. Detective Norman acknowledged that he does not remember some of the details very well, which may be related to the fact that the hearings took place over a year after the traffic stop. Furthermore, although there are inconsistencies in Detective Norman's testimony as to the Jeep's actual speed, Detective Norman and Trooper Dowler were both consistent in the fact that the Jeep was speeding at least 10 miles over the speed limit. This fact was corroborated by Johnson's own admission in the Trooper

Dowler's body-cam video. The record demonstrates that the Jeep was speeding, which served as a lawful basis to stop the vehicle. The trial court determined that the facts were sufficient to meet the applicable legal standard. As the reviewing court, we defer to the trial court's credibility determinations.

### 3. Vehicle Search

{¶ 29} Johnson further argues that the trial court erred in denying his motion to suppress because the smell of raw marijuana alone is not a reasonably reliable indicator of criminal activity.

{¶ 30} We note that as to warrantless search of vehicles, this court has held:

> [I]t is well settled that a warrantless search of an operational automobile, where police officers have probable cause to believe such vehicle contains evidence of a crime, is one of the well-recognized exceptions to the constitutional requirement of a search warrant. *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir.2006), citing *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999), and *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir.2005).

*Morrison v. Horseshoe Casino*, 2020-Ohio-4131, 157 N.E.3d 406, ¶ 46 (8th Dist.);

*see also State v. Moore*, 90 Ohio St.3d 47, 52, 734 N.E.2d 804 (2000).

{¶ 31} With regard to the smell of marijuana, it is well-established that

> the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle.

*State v. Moore*, 90 Ohio St. 3d 47, 48, 734 N.E.2d 804 (2000); *see also State v. Williams*, 8th Dist. Cuyahoga Nos. 92009 and 92010, 2009-Ohio-5553, ¶ 26 ("smell of marijuana emanating from the vehicle justified a search of the vehicle without a warrant based upon the

'plain-smell doctrine'"); *State v. Byers*, 8th Dist. Cuyahoga No. 94922, 2011-Ohio-342, ¶ 16 (the search was supported by probable cause when the police officers discovered that the occupants of the vehicle had been smoking marijuana); *State v. Hopper*, 8th Dist. Cuyahoga Nos. 91269 and 91327, 2009-Ohio-2711, ¶ 20 ("the smell of marijuana gives rise to a reasonable suspicion that the person stopped is engaged in criminal activity").

*State v. Edwards*, 8th Dist. Cuyahoga No. 105163, 2017-Ohio-8867, ¶ 24.

{¶ 32} In the instant case, Trooper Dowler testified that he has been a K-9 handler for approximately six years and works often with undercover officers in narcotics. When he approached the vehicle, he smelled a strong odor of raw marijuana coming from inside the vehicle and noticed that both Johnson and Hall appeared nervous. He stated that he is very familiar with the smell of marijuana because of his experience and the fact that he carries it with him every day. Accordingly, we find that Trooper Dowler had the requisite probable cause necessary to search the black Jeep under the automobile exception.

{¶ 33} Johnson further argues that because medical marijuana and "low-THC hemp" are both legal in Ohio, the odor of raw marijuana was insufficient to establish probable cause for the search since Trooper Dowler could not distinguish between "potentially illegal marijuana from legal hemp by mere smell." Under the automobile exception, however, "probable cause to search a vehicle exists, if under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found' in a vehicle.'" *Morrison*, 2020-Ohio-4131, 157 N.E.3d 406 at ¶ 46, quoting *Tamari*, citing *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir.2002). A "'police officer has probable cause only when he discovers

reasonably reliable information that the suspect has committed a crime.'" *Id.* at ¶ 47, quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000); *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir.2015); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶ 34} Relevant to the instant case, we note that "if an officer has a real belief and reasonable grounds for the belief, probable cause exists despite the ultimate outcome of the case." *Id.* at ¶ 49, *Edvon v. Morales*, 8th Dist. Cuyahoga No. 106448, 2018-Ohio-5171, ¶ 25, citing *State v. Vance*, 2d Dist. Clark No. 2246, 1987 Ohio App. LEXIS 6972, 7 (May 11, 1987); *Bock v. Cincinnati*, 43 Ohio App. 257, 183 N.E. 119 (1st Dist.1931); *Ryan v. Conover*, 59 Ohio App. 361, 18 N.E.2d 277 (1st Dist.1937); *State v. Gross*, 7th Dist. Mahoning No. 01-C.A.-115, 2002-Ohio-3465, ¶ 35 (the accused does not actually have to commit a crime for the arresting officer to possess probable cause).

{¶ 35} Based on the foregoing, Trooper Dowler's testimony that he smelled the odor of raw marijuana when he approached the vehicle was sufficient probable cause to search the vehicle even if the drugs were determined to be legal.

{¶ 36} Therefore, the first and second assignments of error are overruled.

**B.  Ineffective Assistance of Counsel**

{¶ 37} In the third assignment of error, Johnson argues that he received ineffective assistance of counsel to the "extent this Court finds that trial counsel failed to adequately raise or preserve any of the above issues, and that any such issue would have had a reasonable likelihood of success if raised or preserved[.]"

{¶ 38} To establish ineffective assistance of counsel, Johnson must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶ 39} Here, Johnson has failed to demonstrate prejudice. He argues that "[f]ailure to raise and preserve all suppression issues involving a reasonable likelihood of success would in this case constitute deficient and prejudicial performance" without including any facts to support this claim. Rather, his claim of ineffective assistance of counsel is based on presumptions unsupported by the record. We decline to find ineffective assistance of counsel without any reference to the record as to the deficient performance. *See* App.R. 16(A). Indeed, "[a] properly licensed attorney in Ohio is presumed competent." *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985), citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965).

{¶ 40} Therefore, the third assignment of error is overruled.

## III. Conclusion

{¶ 41} The record established sufficient, reasonable suspicion and probable cause to justify the traffic stop of the vehicle, Johnson's subsequent detention, and

the search of the vehicle. As a result, the trial court properly denied Johnson's motion to suppress. Furthermore, we find that Johnson received effective assistance of counsel.

{¶ 42} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MARY EILEEN KILBANE, J., CONCUR