[Cite as *State v. Wright*, 2024-Ohio-1763.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230456 |
| | | TRIAL NO. B-2202732 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N*. |
| TRAVIS WRIGHT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 8, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *William R. Gallagher*, for Defendant-Appellant.

**Bock, Presiding Judge.**

{¶1} A drug dog sniffed and alerted outside of defendant-appellant Travis Wright's car. The dog was trained to detect, among other things, marijuana. But it was not trained to distinguish between medical marijuana, hemp products, and illegal marijuana. Wright moved to suppress drugs found in his car, arguing that the search of the car following the dog's alert violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Wright asserted that because the dog could not distinguish between illegal and legal marijuana, the police lacked probable cause to search his vehicle. The trial court denied the motion and Wright entered a no-contest plea. Wright now appeals.

{¶2} We hold that the dog's alert, combined with the other circumstances known to the police at the time of the search, established probable cause and supported the search of Wright's vehicle.

## I.   Facts and Procedure

### A.  The Stop, Sniff, and Search of Wright's Car

{¶3} In June 2022, Deputy Jeremy Beckwith was conducting surveillance on those who came and went from a hotel known for use by drug traffickers. Beckwith saw an individual, later identified as Wright, arrive in a vehicle and enter the hotel, empty handed. Ten to 15 minutes later, Wright exited from the hotel carrying a suitcase.

{¶4} Wright caught Beckwith's attention because Wright was "what we call head on a swivel, looking left, looking right, kind of suspicious about his surroundings." Beckwith testified that this behavior, combined with Wright's entering the hotel empty-handed and leaving with a suitcase, made the situation especially odd.

2

Wright placed the suitcase in the trunk of his vehicle and drove off. Beckwith radioed other officers in the area about Wright's behavior and a description of the car.

{¶5} Deputy Steven VonHertsenberg was in the area in a marked police cruiser and heard Beckwith's call over the radio. VonHertsenberg located Wright's vehicle and began tailing him. After VonHertsenberg started the tail, Wright began driving in an evasive manner, making several left turns, and quickly speeding up. Wright committed a marked-lanes violation for which VonHertsenberg initiated a traffic stop. When VonHertsenberg turned on his cruiser's overhead lights, Wright's vehicle did not stop immediately and continued for 100 feet into a cul-de-sac at the end of the street before stopping. As VonHertsenberg approached Wright's vehicle, Wright's window was only down about an inch, which concerned VonHertsenberg because it is easier to hear and to ensure safety when a window is down. The officer ordered Wright out of the car, but Wright did not comply. Instead, Wright argued with VonHertsenberg for more than a minute, continuing to refuse to exit from his vehicle. Once VonHertsenberg threatened to break Wright's window, Wright exited from his car.

{¶6} Fewer than two minutes after VonHertsenberg stopped Wright, Sergeant Anthony Lange arrived with Kylo, a certified drug-detection dog. Kylo is trained to detect and alert to the odor of marijuana, cocaine, heroin, and methamphetamine. But Kylo is unable to distinguish between medical marijuana, hemp products, and illegal forms of marijuana because all three products come from variations of the same plant, cannabis. Kylo alerts in the same manner for all substances he is trained to detect. Lange testified that while Kylo has never alerted to what turned out to be medical marijuana, Kylo has alerted to hemp.

{¶7}    Lange brought Kylo to Wright's vehicle, gave Kylo a command to search, and Kylo alerted at the driver's-side door of Wright's car. Lange searched Wright's vehicle with VonHertsenberg and found 19 pounds of marijuana in the suitcase in the trunk of the vehicle.

{¶8}    The state charged Wright with one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and one count of possession of marijuana in violation of R.C. 2925.11(A).

## B.  Cannabis law in June 2022[1]

{¶9}    In 2016, Ohio legalized medical marijuana, codified in R.C. Chapter 3796. It is now legal under Ohio law for those holding a medical-marijuana card to possess a 90-day supply of medical marijuana. R.C. 3796.22. Medical marijuana is "marijuana that is cultivated, processed, dispensed, tested, possessed, or used for a medical purpose." R.C. 3796.01(A)(2).[2] It remains illegal under federal law to possess marijuana. 21 U.S.C. 844(a); 21 U.S.C. 812; 21 C.F.R. 1308.11(d).

{¶10}    In 2019, Ohio legalized the possession of hemp, a low-THC variation of cannabis.[3] In 2018, Congress passed the Agriculture Improvement Act, which

---

[1] This incident occurred before Ohio's November 2023 election in which Ohioans voted to legalize recreational marijuana. We do not consider what affect that change in the law might have on our analysis.

[2] "Marijuana" means "marihuana" as defined under R.C. Chapter 3719 (Controlled Substances):
> all parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin * * * "Marihuana" does not include "hemp" or a "hemp product" as those terms are defined in section 928.01 of the Revised Code.

[3] R.C. 928.01(C) defines hemp as the "plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths per cent on a dry weight basis."

removed hemp from the list of federally-controlled substances.[4] Accordingly, cannabis meeting the definition of "hemp" is legal under both Ohio and federal law.

{¶11} The difference between medical marijuana and illegal marijuana under Ohio law is that medical marijuana is "produced, cultivated, processed, dispensed, tested, possessed, or used for a medical purpose." And the difference between "marijuana" and "hemp" under Ohio and federal law is the level of THC present in the cannabis plant.

## II.    Law and Analysis

### A.  First Assignment of Error: Was the sniff a search?

{¶12}   In his first assignment of error, Wright argues that, because Kylo could alert to both legal and illegal cannabis products, his sniff was a search under the Fourth Amendment. Therefore, he asserts, police were required to have probable cause before they could use a drug-detecting dog. The state responds that Wright waived this issue by not raising it before the trial court.

{¶13}   Generally, a party may not raise an argument on appeal that was not argued before the trial court. *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10. When filing a motion to suppress evidence, a defendant must " 'raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge.' " *State v. Billings*, 1st Dist. Hamilton Nos. C-200245 and C-200246, 2021-Ohio-2194, ¶ 15, quoting *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 219, 524 N.E.2d 889 (1988). Therefore, when a defendant fails to present an argument at a suppression hearing, that argument is waived. *Wintermeyer* at ¶ 10.

---

[4] Ohio's definition of "hemp" mirrors the federal definition. 7 U.S.C. 1639o(1).

{**¶14**}  A trial court granting a motion to suppress on a basis not raised by the defendant's motion commits reversible error because the state must be provided an opportunity to present evidence and arguments to oppose the defendant's motion. *Billings* at ¶ 17, citing *State v. Skeens*, 5th Dist. Tuscarawas No. 2017 AP 11 0030, 2018-Ohio-1610, ¶ 20.

{**¶15**}  Wright did not argue that Kylo's sniff constituted a search under the Fourth Amendment before the trial court. Instead, Wright's motion and argument at the suppression hearing asserted that Kylo's alert did not establish probable cause. Given that Wright did not raise this argument below, he has waived it on appeal. We overrule Wright's first assignment of error.

## B. Second Assignment of Error: Was there probable cause?[5]

{**¶13**}  In his second assignment of error, Wright argues that Kylo's alert did not establish probable cause to search Wright's vehicle because Kylo's training did not allow him to differentiate between legal and illegal cannabis products. Wright argues that, but for the alert, the officers would not have searched his vehicle, and therefore, the existence of probable cause hinges on the reliability of the alert. The state argues that Kylo's alert established probable cause. Further, the state asserts that other factors established probable cause to search Wright's vehicle.

### 1. *Standard of Review*

{**¶14**}  "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Thyot*, 2018-Ohio-644, 105 N.E.3d 1260, ¶ 17 (1st Dist.). When reviewing a trial court's decision to suppress evidence, we " 'accept the trial court's

---

[5] Though Wright's motion raised challenges to the search under both the federal and Ohio Constitutions, Wright did not brief the Ohio constitutional issue on appeal.

findings of fact as true' " if competent, credible evidence supports those findings. *State v. O'Neal*, 1st Dist. Hamilton No. C-220541, 2023-Ohio-3268, ¶ 9, quoting *Thyot* at ¶ 17. But we " 'independently determine whether the facts satisfy the applicable legal standard.' " *Id.*, quoting *Thyot* at ¶ 17.

### 2. *Probable Cause*

{¶15} The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A warrantless search or seizure is presumptively unreasonable—and unconstitutional—unless an exception to the warrant requirement applies. *State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000). The automobile exception to the warrant requirement permits an officer to search a lawfully stopped vehicle if the officer has probable cause to believe that the vehicle contains contraband. *Id.*; *Collins v. Virginia*, 584 U.S. 586, 592, 138 S.Ct. 1663, 201 L.Ed.2d 9 (2018).

{¶16} "A police officer has probable cause to conduct a search when 'the facts available to [him] would "warrant a [person] of reasonable caution in the belief" ' that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013), quoting *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Probable cause requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018), quoting *Illinois v. Gates*, 462 U.S. 213, 243, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), fn. 13. In

7

determining whether probable cause existed at the time of a search or seizure, courts look to the totality of the circumstances. *Id.* Further, the Supreme Court has warned courts against developing "rigid rules, bright-line tests, and mechanistic inquiries;" instead, courts should apply "a more flexible, all-things-considered approach" when reviewing probable-cause determinations. *Harris* at 244.

{¶17} Here, two lines of cases are relevant to our probable-cause analysis. First, an alert from a trained drug-detection dog will ordinarily establish probable cause to search a lawfully-detained vehicle. *State v. Lopez*, 166 Ohio App.3d 337, 2006-Ohio-2091, 850 N.E.2d 781, ¶ 22 (1st Dist.); *State v. Gray*, 2023-Ohio-338, 208 N.E.3d 216, ¶ 21 (12th Dist.). The alert provides probable cause to search the entire vehicle, including any packages or compartments that " 'may logically conceal the object of the search.' " (Emphasis deleted.) *Gray* at ¶ 22, quoting *State v. Welch*, 18 Ohio St.3d 88, 92, 480 N.E.2d 384 (1985).

{¶18} Second, an officer develops probable cause to search the passenger compartment of a vehicle where the officer detects an odor that the officer is qualified to identify, and that odor is "a distinctive odor that undoubtably identifies a forbidden substance." *Moore*, 90 Ohio St.3d at 49, 734 N.E.2d 804, citing *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In *Moore*, the Supreme Court of Ohio held that "if the smell of marijuana, as detected by a person who is qualified to recognize the odor, is the sole circumstance, this is sufficient to establish probable cause. There need be no additional factors to corroborate the suspicion of the presence of marijuana." *Id.* at 50. While *Moore* dealt with a human sniff rather than a dog sniff, this rationale is applicable to dog sniffs to the extent that it discusses the formation of probable cause based on the perception of the odor of contraband.

{¶19} Wright argues that *Moore* is no longer good law because it predates Ohio's legalization of medical marijuana and hemp products. He accordingly asks us to depart from *Moore* and hold that an alert from a dog trained to detect marijuana does not provide probable cause to search.

{¶20} Other courts have continued to apply both lines of cases following Ohio's legalization of medical marijuana and hemp products. *State v. Withrow*, 2022-Ohio-2850, 194 N.E.3d 804, ¶ 19 (7th Dist.) ("The fact that illegal marijuana and legal forms of hemp have the same odor is irrelevant so long as some forms of marijuana remain illegal. Thus, *Moore* remains good law and any detection of the odor would give probable cause to search."); *State v. Tillman*, 2022-Ohio-4341, 203 N.E.3d 71, ¶ 19 (5th Dist.), quoting *Withrow* at ¶ 19 (same); *State v. Johnson*, 8th Dist. Cuyahoga No. 111040, 2022-Ohio-2773, ¶ 33 (same); *see United States v. Hayes*, E.D.Tenn. No. 3:19-CR-73-TAV-HBG, 2020 U.S. Dist. LEXIS 71818, 70-71 (Feb. 21, 2020) ("An alert by a drug detection dog, trained to detect marijuana and other illegal narcotics, means there is a fair probability, not an absolute guarantee, that one of the illegal narcotics, which the dog is trained to detect, will be found in that location."); *United States v. Deluca*, 10th Cir. No. 20-8075, 2022 U.S. App. LEXIS 23003, 13 (Aug. 18, 2022) (same).[6]

{¶21} In other jurisdictions where some forms of marijuana or hemp are legal, courts have held that the smell of marijuana—or an alert from a dog trained to detect marijuana—alone is insufficient to establish probable cause. *See People v. McKnight*, 2019 CO 36, 446 P.3d 397, ¶ 36 ("At most, the alert could be 'suggestive of criminality,'

---

[6] This court has also recently repeated *Moore*'s holding, though the defendant in that case conceded that *Moore* was good law in his briefing and *Moore*'s validity was therefore not before us. *State v. Payne*, 1st Dist. Hamilton No. C-230144, 2023-Ohio-4198, ¶ 13.

but not determinative on its own."); *Commonwealth v. Barr*, 266 A.3d 25, 41 (Pa.2021) ("Accordingly, the smell of marijuana alone cannot create probable cause to justify a search under the state and federal constitutions."); *State v. Torgerson*, 995 N.W.2d 164, 175 (Minn.2023) ("the officers relied solely on the medium-strength odor of marijuana when determining there was a fair probability that contraband or evidence of a crime would be found in Torgerson's vehicle—the very bright-line rule for probable cause advanced by the State and which we have rejected."); *People v. Stribling*, 2022 IL App (3d) 210098, 471 Ill.Dec. 257, 228 N.E.3d 766, ¶ 28 ("The smell of burnt cannabis, alone, coupled with the defendant's statement that someone (he did not state that it was himself) had smoked in the vehicle 'a long time ago,' was not enough for 'a reasonable officer [to] conclude—considering all of the surrounding circumstances, including the plausibility of the [innocent] explanation itself—that there was a "substantial chance of criminal activity." ' "); *People v. Clark*, Mich.Ct.App. No. 345459, 2019 Mich.App. LEXIS 4303, 8 (July 30, 2019) ("Given that defendant was able to produce a medical marijuana provider card, we are not convinced under these circumstances that the 'slight odor' of marijuana would have been sufficient to establish probable cause because, essentially, it would appear under the facts that defendant lawfully possessed the marijuana."); *Lewis v. State*, 470 Md. 1, 27, 233 A.3d 86 (2020) ("law enforcement officers need probable cause to believe the arrestee is in possession of a criminal amount of marijuana to conduct a lawful arrest. The odor of marijuana alone does not indicate the quantity, if any, of marijuana in someone's possession.").

{¶22} At the time of this stop, most forms of marijuana were illegal in Ohio. While the legalization of medical marijuana and hemp products may have lowered the

likelihood that Kylo was alerting to contraband, that likelihood was far from zero. *See Harris*, 568 U.S. at 248, 133 S.Ct. 1050, 185 L.Ed.2d 61 ("The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.").

{¶23} We hold that in determining whether police officers had probable cause to search a vehicle, courts may consider a trained drug-detecting police dog's sniff and alert. *Accord Moore* 90 Ohio St.3d at 50, 734 N.E.2d 804 ("Defendant concedes that the smell of marijuana is a relevant factor in a probable-cause analysis."); *People v. Zuniga*, 2016 CO 52, 372 P.3d 1052, ¶ 20 ("A possible innocent explanation or lawful alternative may add a level of ambiguity to a fact's probative value in a probable cause determination, but it does not destroy the fact's usefulness outright and require it to be disregarded.").

{¶24} We need not decide whether Kylo's alert, standing alone, provided probable cause to search. The officers relied on other factors to determine that they had probable cause to believe they would find contraband in Wright's vehicle. While the change in the law after *Moore* may mean that the odor of cannabis no longer "undoubtably" identifies a forbidden substance, the Fourth Amendment requires consideration of the totality of the circumstances.

{¶25} Here, officers observed Wright enter a hotel known for drug trafficking and exit carrying a suitcase while rapidly looking around at his surroundings. While being tailed by a marked police cruiser, Wright began driving evasively. When stopped by officers, Wright was immediately combative and refused several lawful orders to

exit from his car. These factors, combined with Kylo's alert, provided a sufficient probability that Wright's vehicle contained contraband, therefore establishing probable cause to search his vehicle. We overrule Wright's second assignment of error.

### III.  Conclusion

**{¶26}** For the foregoing reasons, we overrule Wright's two assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**WINKLER** and **BERGERON, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.