[Cite as *State v. Waters*, 2025-Ohio-4479.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.    C-240659
                                                   TRIAL NO.     B-2302689
      Plaintiff-Appellee,          :

  vs.                                   :
                                                          *JUDGMENT ENTRY*

DERRICK WATERS,                         :

      Defendant-Appellant.         :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 9/26/2025 per order of the court.**


**By:**_____
      **Administrative Judge**

[Cite as *State v. Waters*, 2025-Ohio-4479.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :          APPEAL NO.    C-240659
                                             TRIAL NO.     B-2302689
    Plaintiff-Appellee,          :

 vs.                              :
                                                  *O P I N I O N*
DERRICK WATERS,                   :

    Defendant-Appellant.         :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 26, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, *Ronald W. Springman, Jr.* and *Jon Vogt,* Assistant Prosecuting Attorneys, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**Bock, Judge.**

**{¶1}** Officers watched defendant-appellant Derrick Waters pull away from a curb without signaling. The officers stopped Waters, approached the car, and smelled marijuana. Waters admitted to having smoked marijuana recently, so the officers searched Waters's car and located a bag containing a firearm and drugs. Waters moved to suppress the evidence, arguing that the officers lacked probable cause to initiate the traffic stop or search his vehicle. The trial court denied Waters's motion and Waters now appeals.

**{¶2}** We affirm. The trial court found that the officers saw Waters commit a traffic violation, which provided the officers with probable cause to initiate the stop. And Waters's admission to having recently smoked marijuana while he was behind the wheel of the car provided the officers with probable cause to search the car. We overrule Waters's assignment of error and affirm the trial court's judgment.

### I. Factual and Procedural History

#### A. Procedural history

**{¶3}** The State indicted Waters on various weapons, drug-trafficking, and drug-possession charges. Waters moved to suppress the evidence found in his car, arguing that the warrantless stop and search of the vehicle violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution. After a hearing, the trial court denied Waters's motion and issued written findings of fact and conclusions of law. Waters pleaded no contest. The trial court merged several counts and sentenced Waters to an aggregate sentence of 36-months' incarceration. Waters appealed.

#### B. Facts

**{¶4}** In June 2023, Cincinnati police officers Scalf and Cornacchione saw a

driver, later identified as Waters, fail to engage his turn signal when pulling away from a curb. The officers followed the vehicle. Although Scalf testified that the license plate's tinted cover "was not apparently clear," the officers were able to provide the correct license-plate number to a dispatcher.

{¶5} The officers stopped Waters and approached his car. Scalf "observed a strong odor of marijuana emitting from the vehicle." Scalf explained that he was trained to detect the odor of marijuana, but he could not distinguish between medical marijuana, hemp, or illegal marijuana.

{¶6} Scalf told Waters that they had stopped him because his license-plate cover obscured the plate's visibility. Scalf told Waters he smelled marijuana and asked Waters if he had marijuana in the car. Waters denied having marijuana in the car but told officers that he "was smoking a little joint" at some point that day. Waters's statement in the bodycam footage is difficult to decipher, but it appears he said he had smoked marijuana either before he "pulled up" or before he "pulled off."

{¶7} Scalf ordered Waters and a passenger out of the vehicle and informed Waters he was being detained for a drug investigation. The officers searched the car and found a locked bag on the floor behind the front-passenger seat. Officers felt a gun through the fabric of the bag, cut the bag open, and discovered a firearm, a bottle of pills, and a bag they believed contained fentanyl.

{¶8} The officers arrested Waters. Cornacchione prepared an arrest report; Scalf wrote the traffic ticket and later prepared a trial-preparation report. The officers cited Waters only for the obscured license plate. The arrest report does not mention a marked-lanes violation.

## II. Analysis

{¶9} On appeal, Waters challenges the trial court's denying his motion to

suppress. Waters asserts in one assignment of error that the officers lacked grounds to initiate the traffic stop, and that even if they did have grounds for the stop, they lacked probable cause to search his vehicle.

### A. Standard of review

**{¶10}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Thyot*, 2018-Ohio-644, ¶ 17 (1st Dist.). When reviewing a trial court's decision to suppress evidence, we accept the trial court's factual findings if competent, credible evidence supports those findings. *State v. O'Neal*, 2023-Ohio-3268, ¶ 9 (1st Dist.). But we review de novo whether those factual findings satisfy the applicable legal standards. *State v. Harrison*, 2021-Ohio-4465, ¶ 11.

### B. Traffic stops under the Fourth Amendment

**{¶11}** The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A traffic stop is a seizure under the Fourth Amendment and must be reasonable. *State v. Brown*, 2020-Ohio-896, ¶ 8 (1st Dist.). A traffic stop is reasonable where an officer has either probable cause to believe that a traffic violation has occurred or reasonable suspicion that the driver has committed or is committing a crime, "'including a minor traffic violation.'" *Id.*, quoting *State v. Slaughter*, 2018-Ohio-105, ¶ 11 (1st Dist.).

**{¶12}** To determine if an officer had probable cause or reasonable suspicion, courts consider the totality of the circumstances known to the officer at the time and ask "'whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation.'" *Brown* at ¶ 11, quoting *Slaughter* at ¶ 12.

### 1. The traffic stop

**{¶13}** In its findings of fact and conclusions of law, the trial court determined that the officers had grounds to stop Waters's vehicle based on their (1) observing Waters fail to signal before pulling away from the curb, and (2) belief that Waters's license plate was illegally obscured by a tinted cover.

**{¶14}** Cincinnati Mun.Code 506-25 prohibits drivers from pulling away from a curb without using their turn signals. Scalf testified that Waters failed to signal before pulling away from the curb. Waters, however, argues that the trial court erred in finding this testimony credible. He notes that in the bodycam footage, Scalf never mentioned Waters's failure to signal; instead, Scalf told Waters that he stopped the vehicle due to the tinted license-plate cover. Further, neither Scalf nor Cornacchione documented Waters's failure to signal and did not cite Waters for that infraction. Instead, they only cited him for an improperly tinted license plate. Waters points out that the purported failure to signal only arose after he filed his motion to suppress.

**{¶15}** The trial court had discretion to believe Scalf's testimony that he saw Waters commit a traffic violation. While the officers did not cite Waters for this traffic violation, an officer's "failure to issue a traffic citation when there is an indication of a potentially far more significant crime is easily excused when more pressing issues are being addressed." *State v. Batchili*, 2007-Ohio-2204, ¶ 21. The trial court, as the finder of fact, is in "'the best position to resolve factual questions and evaluate the credibility of witnesses.'" *State v. Curry*, 2022-Ohio-627, ¶ 12 (1st Dist.), quoting *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court found Scalf's testimony credible. While the officers' not documenting Waters's failure to signal—or mentioning it at all before the suppression hearing—may give one pause, that alone is not enough to displace the trial court's factual findings on this record.

**{¶16}** We hold that Waters's failure to signal provided the officers probable cause to initiate the stop, so their initiating the stop did not violate Waters's rights under the Fourth Amendment.

### 2. *The vehicle search*

**{¶17}** Waters argues that even if the officers had probable cause to stop his vehicle, their search of his vehicle violated his Fourth Amendment rights. Waters argues that Scalf's smelling marijuana did not provide the officers probable cause to believe Waters's vehicle contained contraband. Waters further argues that this court should reconsider caselaw predating Ohio's legalization of hemp products and medical marijuana, including *State v. Moore*, 90 Ohio St.3d 47 (2000).

**{¶18}** An officer may search a vehicle in compliance with the Fourth Amendment if the officer has probable cause to believe the vehicle contains contraband. *State v. Wright*, 2024-Ohio-1763, ¶ 18 (1st Dist.). In *Moore*, the Supreme Court of Ohio held that an officer has probable cause to search a vehicle where the officer identifies "a distinctive odor that undoubtedly identifies a forbidden substance," which the officer is qualified to detect. *Moore* at 49. The Court concluded that the smell of marijuana alone provided an officer probable cause to search a vehicle. *Id*. at 50.

**{¶19}** In *Wright*, this court considered an argument similar to Waters's—because various forms of marijuana are now legal in Ohio, *Moore* is no longer good law. The *Wright* court held that the smell of marijuana and a certified, trained drug-detecting dog's alert are relevant considerations in a probable-cause determination involving a search for contraband in a vehicle. *Wright* at ¶ 25-28. In *Wright,* the traffic stop and search occurred before Ohio legalized recreational marijuana, so the court did not consider what effect the legalization might have had on its analysis. *Id*. at ¶ 8,

7

fn. 1. The court observed that "[a]t the time of this stop, most forms of marijuana were illegal in Ohio. While the legalization of medical marijuana and hemp products may have lowered the likelihood that [the dog] was alerting to contraband, that likelihood was far from zero." *Id.* at ¶ 25. But the court declined to decide whether the dog's alert, alone, was sufficient to establish probable cause to support the vehicle search, noting that the other circumstances combined with the dog's alert provided probable cause to search. *Id.* at ¶ 28.

{¶20} Here, like in *Wright*, the stop occurred before Ohio legalized recreational marijuana, so we do not consider what effect the legalization has on a probable-cause analysis or the continued validity of *Moore*. Probable cause turns on the facts known to the officer at the time of the stop and at that time, recreational marijuana was still illegal. We follow our precedent in *Wright*.

{¶21} Scalf testified he smelled marijuana when he approached Waters's vehicle. While Scalf conceded he could not distinguish between hemp products, medical marijuana, or illegal marijuana, "[a]t the time of this stop, most forms of marijuana were illegal in Ohio." *See Wright*, 2024-Ohio-1763, at ¶ 25 (1st Dist.). Scalf's smelling marijuana—which may have been illegal under Ohio law—provided a valid factor to support probable cause that the vehicle contained contraband.

{¶22} But the odor of marijuana was not the only factor supporting the search of Waters's vehicle. R.C. 4511.19(A)(1)(a) prohibits any person from operating a vehicle while under the influence of alcohol or drugs of abuse, including marijuana. *See* R.C. 3719.011(A). And Waters, the driver, admitted that he had recently smoked marijuana. These facts provided the officers probable cause to believe that Waters was driving under the influence of marijuana, justifying their searching his car for contraband.

**{¶23}** The officers' stop and search of Waters's vehicle did not violate Waters's constitutional rights. We overrule the assignment of error.

### III. Conclusion

**{¶24}** For the foregoing reasons, we overrule Waters's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **MOORE, J.,** concur.